Breitel, J.
Defendant in each of these cases has been convicted of the misdemeanor violation of section 600 of the Vehicle and Traffic Law, and each attacks the constitutionality of the statute on the ground that the statute invades his privilege against self incrimination. The statute requires a motor vehicle operator involved in an accident, whether culpable or not, to remain at the scene of the accident, identify himself, and report the accident to the police. In each of these cases, the automobile operator, after an accident involving personal injuries to occupants of another vehicle or to pedestrians, left the scene of the accident, in two of them fleeing without removing his vehicle. Two of the cases involve other issues not meriting discussion.[1]
*257 It is concluded that the statute, enacted in its earliest form in 1910 (L. 1910, ch. 374), is valid. The duties imposed by it are reasonable exercises of police power by the State to regulate activities directly relevant to public safety. On this view, the incidental and limited risk of inculpation by identification and report of motor vehicle operators whose conduct involves, or is likely to involve, criminal accusations is insufficient to inhibit the regulatory power by the interposition of the privilege against self incrimination (N. Y. Const., art. I, § 6; U. S. Const., 5th Amdt.).[2]
The validity of the predecessor statute was declared by this court in 1913, three years after its enactment (People v. Rosenheimer, 209 N. Y. 115). Two developments since require that the issue be revisited. The first is that the rationale in the Bosenheimer case was based on the then current, but now rejected, view that the operation of a motor vehicle was a privilege, and that as such, acceptance of the privilege with its conditions, constituted a waiver of constitutional rights, including that of the privilege against self incrimination (id., at pp. 120-122). The court was sage enough to recognize that the privilege-waiver concept could not be applied indiscriminately (id., at p. 122). The second development is the holding in recent cases in the United States Supreme Court that the requirement of self-reporting from those engaged in conduct “inherently suspect of criminal activities ” is unconstitutional (Marchetti v. United States, 390 U. S. 39, 52; Grosso v. United States, 390 U. S. 62, 64; Haynes v. United States, 390 U. S. 85, 98; Albertson v. SACB, 382 U. S. 70, 79; involving severally gambling, firearms, and subversive activities). And, of course, most recent in this development is the case of California v. Byers (402 *258 U. S. 424) in which the court, by a bare majority, sustained the validity of a California motor vehicle -self-reporting statute, one rather similar to that of New York. Notably, the court did not reach beyond holding valid the requirement for the operator to remain at the scene of the accident and identify himself. Thus, it did not pass on the further reporting requirements in the California statute, to which New York has a counterpart (Vehicle and Traffic Law, § 605).
No elaborate discussion is required to eliminate the privilege-waiver rationale for a self-reporting statute. That rationale is no longer acceptable (Marchetti v. United States, supra, at p. 51). Indeed, the very dichotomy between right and privilege in this context has lost whatever intellectual significance it ever had (see, e.g., Goldberg v. Kelly, 397 U. S. 254, 262; Slochower v. Board of Educ., 350 U. S. 551, 555; Dixon v. Alabama State Bd., 294 F. 2d 150, 155-156, cert. den. 368 U. S. 930). The rejection, however, of an outdated terminology and its connotations does not establish the contrary of the proposition they once supported. The simple fact is that a civilized society cannot exist without power to condition lawful activities by limitations essential to the public welfare, even if they affect other protected freedoms. This condition of society requires, therefore, a balancing of interests, social and individual, to achieve both freedom and survival. The only issue here is whether a reasonable balance has been struck between the dangers posed by the activities allowed as of right and the encroachments imposed as conditions for engaging in those activities.
Section 600 of the Vehicle and Traffic Law requires every motor vehicle operator, whether culpable or not, involved in an accident causing property damage or personal injury, to remain at the scene of the accident, exhibit his license, and identify himself to the party sustaining damage and, in the case of personal injury, to a police officer. Failure to do so is a misdemeanor.[3] *259 There is a further reporting provision in the statute (Vehicle and Traffic Law, § 605) not directly involved but to which parallel reasoning may be applied. The problem is whether motor vehicle operation permits in the social interest a limited obligation of self-reporting in connection with accidents.
Motor vehicle accidents account for almost as many deaths in this country as all other categories of accidents combined (U. S. Dept, of Commerce, Statistical Abstract of the United States, 1971, p. 58). The toll is enormous. In 1968, traffic accidents caused 54,862 deaths and an estimated 4,400,000 personal injuries, not to mention huge losses in property damage (id., at pp. 58, 541). The whole system of motor vehicle regulation is built on the identification and qualification of vehicles and operators, by vehicle registration, and operator licensure. The vehicle must always bear its license plates, and the operator must always carry his license on penalty of a presumption that he is unlicensed while the vehicle is operated on a public highway (Vehicle and Traffic Law, § 401, subd. 1; § 402, subd. 1; § 501, subd. 1, par. e; § 501, subd. 4). Despite the high number of vehicle accidents, the ratio to vehicle miles traveled is a very small one.[4] Many accidents occur without anyone’s culpability, let alone criminal culpability, which is not coincident with civil *260 liability in tort. In many accidents only one of the participants is culpable, and others are not.
With the high incidence of automobile use and accidents, it is evident that the close control of vehicles and operators is vital. Involved are safety standards for the vehicles and their equipment, qualification of operators, conditions under which operators operate the vehicles, hazards, both physical and human, to which the operators and vehicles are exposed, ranging from dangerous highways to careless or uncontrolled passage by pedestrians. The significance of having accurate statistics concerning these factors available is evident. At the same time, the preservation of effective civil legal remedies to those sustaining damage as a result of an accident is equally demanding. Finally, and this is the rub, the need exists for effective control over licensed and unlicensed drivers, competent and incompetent drivers, sober and intoxicated drivers, a control enforced by criminal and noncriminal sanctions, and the revocation and suspension of licenses. None of these purposes can be effectively served without a reporting system. A reporting system obviously depends upon operators not absconding. Hence, it is logical to make the operator’s failure to remain and identify himself an offense.
To be sure, the culpable driver, especially one unlicensed, or underage with limited license, or one under the influence of alcohol or drugs, may be incriminated, but the whole system of regulation fosters the safer operation of safer motor vehicles only if there is an effective way of removing or controlling those who create the greatest and unnecessary hazards. It is interesting that of the three pending cases, two of the hit-and-run drivers were unlicensed, and the other was evidently intoxicated.
The system, like so much other law, depends, and essentially so, upon a high degree of public co-operation. Minimal disclosure is suggested by everyday morality and expectations. The mandate, sanctioned by a penalty for the commission of a separate crime, for operators to remain and identify themselves is an assurance that most will. The statute is addressed to the large class of those involved in accidents. Most of the members of that class will not be culpable of offenses more serious than traffic infractions (Vehicle and Traffic Law, § 155). Hence, the *261 risk of incrimination, and then only to the limited extent of identification and report of minimal circumstances, is statistically light.
There are, of course, other reasons why an operator should remain at the scene of an accident, not the least of which is to provide succor to injured persons and. to obtain a policeman whose call for an ambulance will be more readily answered than that of a civilian. Moreover, if the operator, fleeing, leaves his vehicle, as happened in two of these three cases, he adds to the grave hazard of automobile pile-ups.
On this analysis, leaving the scene is a true and substantial independent wrong meriting treatment as a separate criminal offense, unless barred by overriding constitutional limitation.
The cases thus far decided have made the distinction between self-reporting requirements in lawful and unlawful activities. Statutes have been struck down or limited where the focus has been on criminal activity, however the statutory scheme was designed or disguised. The telltale characteristic is that the invalid incriminating statutes have the evident or discoverable purpose of cutting down the regulated activity and seek not merely to control misconduct and its consequences within the activity. The Marchetti, Grosso, Haynes and the Albertson eases (supra) are of that kind. On the other hand, self-reporting statutes designed only to regulate lawful activities and channel such activities into lawful behavior have been sustained as valid, despite incidental risk of inculpation to those who abuse the right to engage in lawful activities or misconduct themselves while so engaged (e.g., California v. Byers, 402 U. S. 424, supra; Shapiro v. United States, 335 U. S. 1, esp. 32-33; United States v. Sullivan, 274 U. S. 259).
In the Byers case (supra) the California court sought to impose a use restriction, so-called, on its leaving-the-scene statute, that is, retaining the statute as valid but forbidding the use of the information obtained in any criminal prosecution which might ensue (71 Cal. 2d 1039,1055). In doing so, it drew a parallel from its reporting statute (Cal. Vehicle Code, §§ 20012-20013), akin to New York’s section 605 of the Vehicle and Traffic Law. That may be a reflection of California’s legislative intent, *262 but it is not of New York’s.[5] The New York reporting statute has no such use restriction, and on the reasoning expressed above, it would defeat some of the purposes of New York’s regulatory scheme to protect those harmed in accidents and to remove or control dangerous vehicles or incompetent operators on the highways. A use restriction, in any event, is of limited value. It may be enough for the law enforcement authorities to know who the culprit is, and the rest can be constructed by rather ordinary investigation. Hence, the identity of the operator is the significant “ link in the chain of evidence ” (People v. Rosenheimer, supra, at p. 119; California v. Byers, 402 U. S. 424, at p. 433, supra).
The situation, of course, would be quite different, as presaged in People v. Rosenheimer (supra, at p. 122) if the law sought to require the operator to testify in a criminal prosecution against him arising from the accident, or to waive a jury, or perhaps even to stipulate beyond a claim of privilege what must be contained in highly-incriminatory detail in a motor vehicle accident report to the Motor Vehicle Department. Such extreme requirements, on the one hand, are too directly and likely to be incriminatory, and, on the other hand, have never been and are not likely to be necessary to effective motor vehicle control.
One may put the basic issue another way. If the purpose of the statute is to incriminate, it is no good. If its purpose is important in the regulation of lawful activity to protect the public from significant harm, especially to the person but also to property, and only the incidental effect is occasionally to inculpate, then the statute is good within constitutional limitations.
It may be observed that no standard based on a ‘ ‘ highly selective group inherently suspect of criminal activities ” has been used. In the first place, that standard was a product of the necessity to reach a Federal distinction where the questioned activity was not criminal everywhere (see, e.g., Marchetti v. *263 United States, supra). In the second place, the standard runs into difficulties as it did in the Byers case (supra). Vehicle operators generally do not belong to the group. Hit-and-run operators obviously do. Consequently, the standard shrinks or expands depending upon the fineness of classification. For purposes of State law it is enough to distinguish between regulation of lawful activities in which reasonable and necessary self-reporting may be required, and unlawful activities in which the incriminating effect and the incriminating purpose of self-reporting is overwhelming and, therefore, impermissible.
Essential to a balancing of competing interests in a complex society is recognition that excessive protection for users of modern machinery and devices with unusual hazards may deprive others, nonusers and users alike, of their rights. In the case of the motor vehicle the situation of the pedestrian is particularly critical, but all the others who use or occupy vehicles are also of great concern. The problem is acute, because unlike unlawful activities, the engagement in lawful activities is generally encouraged as a part of cherished freedoms. But it is obvious that such encouragement, especially of those activities that are or may become especially dangerous, cannot be solely or largely at the expense of victims of malfunctions, just in order to protect some attenuated privilege against self incrimination on the part of malefactors engaged in otherwise lawful activities.
If indeed it be true that self-reporting in motor vehicle statutes has been regarded by the Legislature as necessary to the regulatory scheme, and self-reporting on its face certainly seems to be, then the risk of incidental inculpation is a small price to pay for the use of the motor vehicle by its operator or owner, just as the duties to report all income, inclusive of unlawful income, is a small price to pay for government. It is not too much, for example, to ask of a building owner using high-rise speedy elevators that he report periodically on its maintenance and occasions of malfunction, or that he do the same with respect to fire protections and the happening of fire and industrial accidents in his building. Nor should a physician be excused from reporting a death because he might be accused of criminal negligence. And certainly, it would be incongruous to assert *264 that a motorist stopped for a moving violation of the traffic laws may not be required by penal sanctions or presumptions to produce his license and identify himself.
Finally, the requirement of self-reporting to a lesser or higher degree in motor vehicle statutes is just about as old as the motor vehicle itself. While antiquity is not an infallible criterion for determining the scope of constitutional rights, traditional usage and understanding is helpful in defining the privilege against self incrimination (Ullmann v. United States, 350 U. S. 422, 438). This must be so unless in this world which has few absolutes, constitutional rights and privileges are inflexible absolutes, even if they drive us to vehicular decimation.
Accordingly, the orders of the Appellate Terms should be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Bergán, Jasen and Gibson concur.
In each case: Order affirmed.

. In People v. Samuel, error is assigned in the admission into evidence of a spontaneous interrogatory by defendant to the police without pretrial notice *257 pursuant to the then section 813-f of the Code of Criminal Procedure. Instead, the nonjury court adjourned the trial to afford defendant opportunity to pursue an investigation or move to suppress. In People v. Baker, defendant contends that he complied substantially with the statute by making instant report to his superiors, who promptly appeared at the scene of the accident in his stead, while the police were still there.

. The provision in each Constitution forbids in identical language that a person “be compelled in any criminal case to be a witness against himself”. The literal language has of course been expanded in the decisional law well beyond this simple statement (see Friendly: The Fifth Amendment Tomorrow: The Case for Constitutional Change, 37 U. Cin. L. Rev. 671).

. The statute reads as follows: “Any person operating a motor vehicle or motorcycle who, knowing that damage has been caused to the real property or to the personal property, not including animals, of another, due to the culpability of the person operating such motor vehicle or motorcycle, or to accident, leaves the place where the damage occurred without stopping, exhibiting his license and giving his name, residence including street and number, and license number to the party sustaining the damage, or to a police officer, or in ease no police officer nor the person sustaining the damage is present at the place where the damage *259 occurred then reporting as soon as physically able the same to the nearest police station, or judicial officer, shall be guilty of a misdemeanor. Any person operating a motor vehicle or motorcycle who, knowing that injury has been caused to a person, due to the culpability of the person operating such motor vehicle or motorcycle, or to accident, leaves the place of said injury or accident, without stopping, exhibiting his license and giving his name, residence, including street and street number, and license number, to the injured party and also to a police officer, or in case no police officer is in the vicinity of the place of said injury or accident, then reporting as soon as physically able the same to the nearest police station or judicial officer, is guilty of a misdemeanor. A police officer or judicial officer receiving a report of such an accident shall make a memorandum of the facts reported, and of such additional facts relating to the accident as may come to his knowledge, and forthwith deliver the same to a police justice or other magistrate of the city, village or town. Any such justice or magistrate or any judicial officer to whom such accident may have been reported in the first instance shall keep in his office a record of the facts disclosed by such memorandum or report.”

. Thus in this State in 1969 there were 463,334 reportable vehicle accidents occurring in 68,582,000,000 estimated miles traveled (State of New York, 1970, Dept, of Motor Vehicles, Accident Facts, pp. 9-10).

. Nor is it that of Illinois. See People v. Lucus (41 Ill. 2d 370), holding its hit-and-run statute valid and collecting cases in other States sustaining similar enactments. See, also, People v. Christiansen (62 Misc 2d 1034 [Crim. Ct. N. Y. City, Savarese, J.]) rejecting the approach of the California court in the Byers case.