**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

v.

**JOSEPH DWENCE, Defendant**

Traffic Nos. 1659-77 and 1660-77

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

October 5, 1977

STEDMAN HODGE, ESQ., Deputy Assistant Attorney General (Department of Law, Criminal/Family Division), St. Thomas, V.I., *for plaintiff*

BRENDA HOLLAR, ESQ. (POOLE & HOLLAR), St. Thomas, V.I., *for defendant*

FEUERZEIG, *Judge*

MEMORANDUM OPINION

This case presents an important question of constitutional law that, as far as research discloses, is one of first impression in this jurisdiction. At issue is the scope of the constitutional privilege against self-incrimination. A subsidiary but equally important issue is the extent to which the teachings of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), are to be applied to a traffic accident investigation.

The facts are not in dispute. On April 29, 1977, at approximately 10:30 a.m., the defendant, Joseph Dwence, was driving up Cassi Hill in St. Thomas. In negotiating a curve, the left front wheel of his Volkswagen veered off the road and dropped approximately four to six inches. The defendant applied his brakes and turned the steering wheel to the right. This caused the car to turn over on its left side. As a result the defendant injured his left arm and hand. No other vehicle was involved and no property was damaged other than the defendant's vehicle.

Upon freeing himself from the vehicle defendant went home. From there, accompanied by his wife and a friend, he went to Fort Christian to report the accident to the police as required by 20 V.I.C. § 541.[1] The matter was assigned to Officer L. Andrews who asked Mr. Dwence his name. Mr.

---

[1] Title 20 V.I.C. § 541 provides:

> In case of accident to person or property due to the operation of a motor vehicle or bicycle, the person operating such vehicle shall stop and give his name and address and license number to the person injured, or to any policeman or other person interested, and if he is not the owner of the vehicle, also the name and address of such owner. He shall also report the details of such accident at the nearest police station. In case of personal injury, the motor vehicle causing such injury shall take the injured person or persons to the hospital, if desired, or the residence of such injured person.

Dwence told him. The officer then requested Mr. Dwence's driver's license. The defendant said he did not have one. The officer then led the defendant into a back room, orally gave him the Miranda warnings, and resumed questioning. Mr. Dwence again admitted that he did not have a valid driver's license. He was then placed under arrest for operating a vehicle without a license, 20 V.I.C. § 371, and for leaving the scene of an accident, 14 V.I.C. § 1382. Bail was fixed and posted in the amount of one hundred dollars. Subsequently, but before trial, the charge of leaving the scene of an accident was dismissed, at the request of the Government.

Defendant on May 18, 1977, moved to dismiss the summons and complaint, or, in the alternative, to quash the allegedly unlawful arrest and to suppress the statements he had made at the Fort. By stipulation, the parties agreed that the motion could be heard and decided based upon the evidence adduced by the Government in its case in chief. The matter was heard on May 19, 1977.

The defendant contends that his initial statement, that he had no driver's license, was made in the absence of a precautionary Miranda warning. He therefore urges the statement should be suppressed because it was obtained in violation of the Fifth and Fourteenth Amendments of the Federal Constitution. Although defendant mistakenly characterizes the incriminating statement as the "forbidden fruits" of an unlawful arrest,[2] he is correct that they should be excluded if obtained in violation of his constitutional rights. Miranda v. Arizona, supra. The Government

---

[2] It is clear that the statements were made prior to the defendant's arrest and thus were not the "fruits" or the result of an illegal arrest. Rather, the arrest was predicated on the statements. The defendant also attacks the arrest as being unlawful, but in view of this court's ruling on the admission of the defendant's statements, the court does not believe it is necessary to decide that question. Moreover, a determination as to whether the arrest was lawful or unlawful would have no bearing on the disposition of the defendant's motion to suppress the statements made by him.

apparently concedes the applicability of Miranda, but argues that the defendant waived his rights by his "voluntary" appearance at Fort Christian and his "spontaneous" statements to the officer, relying on Pettyjohn v. United States, 419 F.2d 651 (D.C.Cir. 1969). Defendant's appearance, however, was not voluntary, nor were his statements spontaneous. It is disingenuous and, as the defendant points out, inconsistent for the Government to suggest that Dwence's appearance at the Fort to report the accident was voluntary when he did so pursuant to a statutory obligation, 20 V.I.C. § 541, which, if violated, would have rendered him criminally liable to a fine of up to $500 or one year in jail, or both. 20 V.I.C. § 544(c).[3] A less "voluntary" situation is difficult to imagine.[4]

The Government's contention that the statement was "spontaneous" or "threshold," as well as its reliance on Pettyjohn, supra, must be rejected. In Pettyjohn the defendant voluntarily entered the police station and before the utterance of a single word by the police, confessed to a murder. By contrast, Dwence reported to Fort Christian under compulsion of law and admitted that he did not have a license only in response to Officer Andrews' demand for production. The admission was thus neither spontaneous nor threshold as it was made in the context of an investigation into an auto accident.

■■ This, however, does not end the court's inquiry as to the admissibility of defendant's admission. The further question that arises is what, if any, application does the Fifth Amendment protection against self-incrimination have to motor vehicle operators in the context of an

---

[3] This is a greater penalty than can be imposed for driving without a license, which carries a maximum fine of $200 or six months in jail, or both.

[4] Defendant in his brief contends that absent the statute he would not have reported to the Fort. This contention takes on added force in light of the fact that no other vehicles, property or persons were involved in the accident.

investigation of a motor vehicle accident. Although the issue was apparently unrecognized and, therefore, not briefed by counsel for either side, the court holds that the Fifth Amendment does not give a motorist the privilege of refusing to produce his license when requested to do so by a police officer in the process of a traffic accident investigation. Moreover, the defendant's admission is admissible even in the absence of a Miranda warning.

In deciding the case sub judice, the court is guided by California v. Byers, 402 U.S. 424, 91 S.Ct. 4535, 28 L.Ed.2d (1971). Byers had illegally passed another vehicle causing an accident, but had failed to stop and identify himself to the other motorist in violation of California's "hit and run" statute. He challenged the constitutionality of the statute on the grounds that it coerced an admission from him that he was the driver of a vehicle involved in an accident; that such an admission was a vital link in the chain of evidence leading to ultimate prosecution and conviction, and that the statute thus impermissibly ran afoul of the self-incrimination clause of the Fifth Amendment.

A majority of the Supreme Court, over a sharply worded dissent, upheld the statute. The plurality opinion observed that organized society imposes many burdens on its citizens, not the least of which are self-reporting requirements on a wide variety of activities ranging from income tax returns to industrial pollution reports. The Court noted that in many cases there is the possibility, often very real, of self-incrimination and of subsequent criminal prosecutions for offenses disclosed by the information filed. However, the Supreme Court found that "the mere possibility of incrimination is insufficient to defeat the strong policies in favor of a disclosure called for by statutes like the one challenged here." 402 U.S. at 428, 91 S.Ct. at 1538. Furthermore, the plurality concluded that an "extravagant" expansion of the right against self-incrimination

would result from a determination that the statutory scheme was "testimonial in the Fifth Amendment sense." 402 U.S. at 431, 91 S.Ct. at 1539. Moreover, the Court said, "disclosure of name and address is an essentially neutral act," which is necessary to carry out the legitimate police powers of regulating the use of motor vehicles. 402 U.S. at 432, 91 S.Ct. at 1540.

The statute in Byers did not, however, also require a motorist to report to police as does the Virgin Islands statute, nor did it require the driver to produce his driver's license as was requested of Dwence in this case. In People v. Samuel, 29 N.Y.2d 252, 327 N.Y.S.2d 321, 277 N.E.2d 381 (1971), the New York Court of Appeals upheld that state's hit and run statute, which required a driver to remain at the scene and identify himself as well as report the accident to the police and exhibit his driver's license. Speaking for the court, Judge Breitel went to some length in describing New York's need for the information. This court finds the following excerpts from that opinion extremely persuasive:

The simple fact is that a civilized society cannot exist without power to condition lawful activities by limitations essential to the public welfare, even if they affect other protected freedoms. This condition of society requires, therefore, a balancing of interests, social and individual, to achieve both freedom and survival....

. . . .

Motor vehicle accidents account for almost as many deaths in this country as all other categories of accidents combined (U.S. Department of Commerce, Statistical Abstract of the United States, 1971, p. 58) The toll is enormous. In 1968, traffic accidents caused 54,862 deaths and an estimated 4,400,000 personal injuries, not to mention huge losses in property damage (id., at pp. 58, 541)....

. . . .

The system, like so much other law, depends, and essentially so, upon a high degree of public cooperation. Minimal disclosure is suggested by everyday morality and expectations. The mandate, sanctioned by a penalty for the commission of a separate crime, for

operators to remain and identify themselves is an assurance that most will. The statute is addressed to the large class of those involved in accidents. Most of the members of that class will not be culpable of offenses more serious than traffic infractions. . . . Hence, the risk of incrimination, and then only to the limited extent of identification and report of minimal circumstances, is statistically light.

. . . .

. . . If the purpose of the statute is to incriminate, it is no good. If its purpose is important in the regulation of lawful activity to protect the public from significant harm, especially to the person, but also to property, and only to incidental effect is occasionally to inculpate, then the statute is good within constitutional limitations.

. . . .

Finally, the requirement of self-reporting to a lesser or higher degree in motor vehicle statutes is just about as old as the motor vehicle itself. While antiquity is not an infallible criterion for determining the scope of constitutional rights, traditional usage and understanding is helpful in defining the privilege against self-incrimination.

277 N.E.2d at 383–384, 385–387. See also South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092 (1976) (where, in a Fourth Amendment context, the Supreme Court has noted that because automobiles are "subjected to pervasive and continuing governmental regulation and controls" the expectation of privacy is "significantly less." 428 U.S. at 367–68, 96 S.Ct. at 3096).

In Banks v. Commonwealth, 230 S.E.2d 256 (Va. 1976), the Supreme Court of Virginia was required to pass on a similar statute. In Banks, however, the issue was even more clear-cut because the defendant was an adjudicated habitual offender. The defendant contended that Virginia's law required him to report to the police that he had been driving, that he had been in an accident, and that he had no driver's license, it having been revoked in an habitual offender proceeding. Consequently, he argued that by complying with the law he would be providing the state

with the entire corpus delecti of the crime and proof of identity—every element needed for a criminal habitual offender conviction with severe penitentiary sanctions.

Citing Byers and People v. Samuel, supra, the Virginia Court found that a balancing of the public interest against the individual's constitutional claim, in light of his previous record, did not tip the scales in favor of the accused.

Accordingly, we hold that even though there may be a "real" possibility of self-incrimination to the "hit and run"-habitual offender stemming from enforcement of our statute, nevertheless, the State's vital interest in its self-reporting system compels rejection of an effort to extend the self-incrimination privilege to such statutory framework. 230 S.E.2d at 259.

Here, 20 V.I.C. § 541 does not require the production of a driver's license. However, 20 V.I.C. § 371 does require an operator of a motor vehicle to display his license upon demand of any police officer.[5] The two sections, both a part of Title 20, must be read together and given a reasonable construction.[6] Although the facts in this case are such that the defendant was not at the scene of the accident or near

---

[5] 20 V.I.C. § 371 provides:

    (a) Except as provided in this chapter, no persons shall operate a motor vehicle upon the public highway without an operator's license issued by the Commissioner of Public Safety.

    (b) The licensee shall have such license in his immediate possession at all times when operating a motor vehicle and shall display the license upon demand of any peace officer or other person authorized by the Commissioner of Public Safety. It shall be a defense to any charge under this subsection if the person so charged produces in court an operator's license theretofore issued to such person and valid at the time of his arrest.

[6] See 2A Sutherland, Statutory Construction, § 46.05 at 56–57:

A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. . . .

. . . .

. . . "A statute is to be construed with reference to its manifest object, and if the language is susceptible of two constructions, one which will carry out and the other defeat such manifest object, it should receive the former construction." In re National Guard, 71 Vt. 493, 45 A. 1051 (1899).

The two sections are in fact part of a whole statute, being part of the Virgin Islands Code as enacted on May 16, 1957, by the Virgin Islands Legislature by Act No. 160.

his vehicle when asked to produce his driver's license, this does not preclude a request for a license. There is no dispute that a police officer's demand for production of a driver's license at the scene of an accident, made in the context of an accident investigation, is proper and must be complied with. That same demand made in the same context is equally proper even though made at the police station, some distance from the accident. The purpose of the demand and the policies in support of enforcing compliance with it are the same no matter where the demand is given as long as such request is not too far removed from the accident in point of time, as in this case.[7] The presence of the police, or for that matter the motorist, at the scene of the accident is not the sine qua non for the authority to demand production of the motorist's license. This is because

The production of a driver's license and a registration card is in an essentially neutral act. Whatever the collateral consequences of disclosing the name and address, the statutory purpose is to implement state police power to regulate use of its motor vehicles. California v. Byers, 402 U.S. 424, 91 S.Ct. 1575, 12 L.Ed.2d (1971).

Byrd v. State, 13 Md. App. 288, 283 A.2d 9, 11 (1972). Moreover, it also has been held that the requirement that a motorist possess a driver's license while operating a vehicle and exhibit it when requested to do so by a police officer is not within the ambit of the Fifth Amendment's protection.

It is not suggested, and we would not find, that the requirement for such identification involves any Fifth Amendment overtone. California v. Byers, supra.

State v. Bucich, 134 N.J.Super. 111, 338 A.2d 827, 830 (1975). See also United States v. Camacho, 506 F.2d 594

---

[7] Cf. People v. Hart 75 Misc.2d 908, 349 N.Y.S.2d 289 (1973), where the court held that if a car check is authorized under New York law while a suspect is in the car, such a check also is authorized even when a suspect is not in his vehicle when police have reason to believe that he committed a crime.

(9th Cir.)[8] Thus, while this court certainly finds that requiring one to report an accident to the police and produce a driver's license upon demand, given the facts of the instant case, comes closer to being an encroachment of one's Fifth Amendment's rights than simply having to stop and state one's name and address, the authorities and cases decided to date compel this court to conclude that such a requirement does not violate the constitutional privilege against self-incrimination. See also State v. Engstrom, 79 Wash.2d 469, 487 P.2d 205 (1971); People v. Lucas, 4 Ill.2d 370, 243 N.E.2d 233 (1968); State v. Lemme, 244 A.2d 585 (R.I. 1968).

Clearly, non-production or non-ownership of a license is not evidence that tends to incriminate one with criminal fault for an accident. It is a separate statutory offense unconnected with the accident reported. It does not grow out of nor is it deemed the proximate cause of the accident. People v. Lucas, supra. Here, in fact, Dwence is not charged with any offense even tangentially related to the accident. He is charged with operating a motor vehicle without a license in violation of 20 V.I.C. § 371. The fact that the police came upon this information during the course of an accident investigation initiated by defendant's compliance with the self-reporting statute, while pushing the state's police power to its limits, is insufficient to establish a violation of the constitutional right to remain silent.

There are additional reasons for this court's denial of defendant's motion to suppress. According to Officer

---

[8] The Ninth Circuit Court of Appeals stated:
> Mere request for written identification of a person, even a suspect, by law enforcement or security officers, does not necessitate the giving of Miranda warnings.

506 F.2d at 595. See also People v. Samuel, 277 N.E.2d at 387, where the court stated:
> . . . And certainly, it would be incongruous to assert that a motorist stopped for a moving violation of the traffic laws may not be required by penal sanctions or presumptions to produce his license and identify himself.

Andrews' testimony, the defendant was given Miranda warnings after his damaging admission. Subsequently, the officer again asked defendant for his license and defendant again acknowledged that he did not have one. Dwence argues in his brief that he "felt compelled" to answer the question propounded. No evidence has been introduced, however, either by way of affidavit or testimony at trial in support of this assertion. This court, in utilizing the test announced in United States ex rel. Hayward v. Johnson, 508 F.2d 322 (3d Cir. 1975), finds from the totality of the circumstances surrounding the admission that it was the product of an "essentially free and unconstrained choice" on the defendant's part, that it was "the product of a rational intellect and a free will," and that defendant's will was not "overborne."[9]

More importantly, however, this court does not find that at the time Mr. Dwence was asked to produce a license that he was in police custody so as to require the giving of Miranda warnings. Before Miranda warnings are required the defendant must be in custody or otherwise deprived of his freedom of action in some significant manner. Custodial interrogation is defined in Miranda as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612. Although Mr. Dwence appeared at Fort Christian in compliance with 20 V.I.C. § 541 such an appearance cannot

---

[9] The court formulated the test of voluntariness as follows:

In determining whether a confession was voluntary, we must satisfy ourselves that the confession was "the product of an essentially free and unconstrained choice by its maker," that it was "the product of a rational intellect and a free will" and that the appellant's will was not "overborne." In making this determination, it is essential for us to consider the "totality of the circumstances" surrounding the obtaining of the confession. Schneckloth v. Bustamonte, 412 U.S. 218, 226–227, 93 S.Ct. 2041, 36 L.Ed.2d 845 (1973); Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); Haynes v. Washington, supra, at 513–514 of 373 U.S., 83 S.Ct. 1336.

Hayward v. Johnson, supra at 326, footnotes omitted.

159

be said to have constituted an arrest or his being taken into custody so as to require the giving of Miranda warnings prior to the officer's request for Mr. Dwence's driver's license. Only after he was, in fact, arrested was he entitled to the Miranda warnings, which Officer Andrews said he already had given. See Oregon v. Mathiason, 429 U.S. 992 (1977).

In view of the foregoing, defendant's motion to dismiss the complaint or, in the alternative, to suppress the statements taken from him be and the same hereby is denied, and defendant is found guilty of driving without a license in violation of 20 V.I.C. § 371.