OPINION OF THE COURT
John M. Leventhal, J.
The defendants, Simona Patterson and Deshawn Smart, were each charged in an indictment with attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. Simona Patterson was also charged with the crimes of criminal facilitation in the fourth degree and tampering with physical evidence.
Defendant Smart was convicted of all counts and defendant Patterson was convicted of two counts of the indictment, namely criminal facilitation in the fourth degree and tampering with physical evidence. This decision expands on two rulings made by the court during trial — one concerning the request to charge a justification defense to possession of a weapon, and the second concerning the implication of the privilege against self-incrimination relating to a police officer’s failure to report the discharge of her firearm in violation of police procedure.
The first issue decided was whether defendant Smart was entitled to a charge of justification or in the alternative to a temporary and lawful possession instruction relating to the weapons counts. The second issue determined was whether the People would be allowed to show, as being relevant to the *789 charge of tampering with physical evidence, that defendant Patterson, a probationary police officer, had failed to report the discharge of her police issued firearm.
The pertinent facts are as follows:
On July 12, 1995, defendants were leaving the Marcy Housing projects in the Williamsburg section of Brooklyn when they met the complainant, Ronnie Williams, defendant Smart’s uncle. A heated argument ensued.[1] Defendant Patterson was a probationary police officer who was on maternity leave. Williams testified that Patterson gave Smart her weapon, but Williams never saw the weapon before Smart held it in his hand. Sheneane Bethea, a 21-year-old woman who was playing handball nearby at the time of the incident, testified on the defendant’s case that she observed Williams place his right hand across his body and under his outer shirt. Bethea further testified that in response to this motion by Williams, she observed Smart place his hand in Patterson’s hándbag and pull out a gun. Ms. Bethea ran away and did not see any shots fired. The testimony of Williams and a medical expert revealed that Williams had been shot from 8 to 11 times in the body, arms, and legs. Ballistic experts testified that the 14 shell casings recovered from the scene were discharged from Patterson’s police issued firearm, a nine millimeter "Glock” handgun. The spent bullets that were recovered from the scene and Williams’ body were consistent with being fired from Patterson’s weapon. There was not a conclusive match as the bullets were somewhat deformed from impact. Williams and Lori Carrion, a resident of the Marcy houses who did not view the shooting, testified that both defendants fled the scene in an automobile almost immediately. It was established that Patterson failed to report the discharge of her firearm[2] and that the firearm when taken from Patterson at the time of her arrest, eight days af *790 ter the shooting, showed no evidence of discharge, appeared to have been cleaned, and was fully loaded.[3]
Smart requested and was granted a justification (self-defense) charge to the jury relating to the attempted murder and assault counts. (See, Penal Law § 35.15.) There was a view of the evidence in the light most favorable to the accused to support the justification charge, at least as to the initial use of the weapon. (People v Wesley, 76 NY2d 555, 559; People v Goetz, 68 NY2d 96, 113-115; People v McManus, 67 NY2d 541, 548; People v Watts, 57 NY2d 299, 301.) The court also charged the jury as to the use of excessive deadly force. (People v Taylor, 92 App Div 29, 32-33.)
Smart also requested a jury charge as to temporary and lawful possession relating to the weapons counts. This request to charge was granted and the appropriate law was given to the jury by the court.
It is clear that justification may excuse the otherwise unlawful use of a weapon, but it is difficult to imagine circumstances where it could excuse the unlawful possession of it. (People v Almodovar,[4] 62 NY2d 126, 130; People v Pons, 68 NY2d 264 [defense not available to one charged with possession of a weapon, even when element of possessory crime is intent to use weapon unlawfully].) Here Smart contends that his possession of the weapon was lawful. (People v Harmon, 7 AD2d 159 [defendant took weapon from assailant in the course of fight]; cf., People v Snyder, 73 NY2d 900 [Charge properly not given even though defendants wrestled gun from complainant during fight as defendants did not report incident to the State Police whose barracks were around the corner and who responded to scene within half hour of altercation. Defendants retained gun for at least one additional day].) As the weapon was found eight days later in possession of codefendant Patterson, who was then a police officer, one may infer that Smart turned the weapon over to Patterson immediately after the subject incident in the absence of any contrary evidence on this issue. (People v La Pella, 272 NY 81; see also, People v Banks, 76 *791 NY2d 799; People v Williams, 50 NY2d 1043.) Thus, a reasonable view of the evidence in a light most favorable to the accused supports a charge of temporary and lawful possession.
Defendant Patterson presented a more problematic issue. Patterson argued that the court should not permit testimony that she failed to report the discharge of her firearm in violation of police regulations requiring her to do so. Patterson contends that the admission of such evidence even if relevant to the tampering with physical evidence charge would be violative of her Fifth Amendment privilege against self-incrimination as to the other crimes charged in the indictment. (US Const 5th Amend.) Whenever a court is confronted with the question of a compelled disclosure that has an incriminatory potential, the judicial scrutiny is invariably a close one. (California v Byers, 402 US 424, 427.) This court after considering Patterson’s claim of privilege allowed such evidence finding no violation of Patterson’s right against self-incrimination.
There is no per se rule under the Fifth Amendment prohibiting the use of a defendant’s prearrest silence against him. (Jenkins v Anderson, 447 US 231 [Where there was no governmental action inducing a defendant to remain silent before arrest, there is no Fifth Amendment violation. Nor does the use of prearrest silence to impeach a defendant’s credibility deny him fundamental fairness under the Fourteenth Amendment]; People v Rothschild, 35 NY2d 355 [police officers under duty to inform superiors of undercover activities]; but see, People v Conyers, 52 NY2d 454, 459 [Evidence of a defendant’s postarrest silence is inadmissible because of State evidentiary rule that the potential for prejudice inherent in such evidence outweighs its probative worth in the absence of unusual circumstances. Such unusual circumstances existed in Rothschild. (People v Conyers, 49 NY2d 174, 178)].)
The Supreme Court has consistently struck down as violative of the privilege against self-incrimination the requirement of self-reporting from those engaged in conduct " 'inherently suspect of criminal activities’ ” (Marchetti v United States, 390 US 39, 52 [occupational and excise taxes on gambling required disclosures only of gamblers, the great majority of whom were likely to incriminate themselves by responding]; Grosso v United States, 390 US 62, 64 [gambling registration statute]; Haynes v United States, 360 US 85, 98 [petitioner prosecuted for failure to register a firearm]; Albertson v SACB, 382 US 70, 79 [order requiring registration by individual members of a *792 Communist organization violated the privilege]). Not all affirmative duties to report violate the privilege against self-incrimination. (California v Byers, 402 US 424, supra [California "hit and run” statute requiring driver of a motor vehicle involved in an accident to stop at the scene and give his name and address does not violate the constitutional privilege against self-incrimination]; People v Samuel, 29 NY2d 252 [requirements of New York’s "hit and run” statute do not violate State constitutional right against self-incrimination (NY Const, art I, § 6)]; Shapiro v United States, 335 US 1, 32-33 [the privilege against self-incrimination which exists as to private papers cannot be maintained in relation to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established]; United States v Sullivan, 274 US 259, 263-264 [Bootlegger claimed privilege against compulsory self-incrimination in prosecution for failure to file tax return because such filing would tend to incriminate him by revealing the unlawful source of such income. The Supreme Court rejected this claim on the grounds that it amounted to "an extreme if not an extravagant application of the Fifth Amendment”]; United States v Medley, 33 MJ 75 [the United States Court of Military Appeals held that accused’s conviction of being derelict in her duty to report cocaine use by other service members did not violate her right against compulsory self-incrimination, though she was convicted of wrongfully using cocaine for her conduct with same service members on another occasion].) The distinction must be drawn between self-reporting requirements involving lawful and unlawful activities. "Statutes have been struck down or limited where the focus has been on criminal activity, however the statutory scheme was designed or disguised. The telltale characteristic is that the invalid incriminating statutes have the evident or discoverable purpose of cutting down the regulated activity and seek not merely to control misconduct and its consequences within the activity * * * On the other hand, self-reporting statutes designed only to regulate lawful activities and channel such activities into lawful behavior have been sustained as valid, despite incidental risk of inculpation to those who abuse the right to engage in lawful activities or misconduct themselves while so engaged” (People v Samuel, 29 NY2d, at 261, supra [citations omitted]).
The New York Police Department Patrol Guide, Procedure No. 116-20, requires a police officer, whether on or off duty to *793 notify promptly the designated personnel when her firearm is discharged. The stated purpose of this regulation is "to record and evaluate incidents in which uniformed members of the service discharge their firearm, are fired upon, or are the subject of an assault, harassment, menacing, or reckless endangerment, while performing lawful duty.” (Emphasis added.) This self-reporting statute is clearly one which invokes the regulation of a lawful activity. The purpose of the regulation is not to incriminate. Its purpose is important in the regulation of lawful activity to protect the public. The regulation has only an incidental effect occasionally to inculpate and is thus constitutional.
One may argue that Patterson in order to preserve her Fifth Amendment claim in a timely fashion should have reported the discharge and declined to make further statements while asserting the privilege. (California v Byers, 402 US, at 434, supra; United States v Sullivan, 274 US, at 264, supra; People v Mullady, 178 AD2d 614, 615.) The failure to interpose the privilege against self-incrimination may be lost by not asserting the defense in a timely manner. (Garner v United States, 424 US 648 [Taxpayer who provided occupation on tax return as gambler could not interpose Fifth Amendment objection to thwart introduction of tax return as evidence relating to illegal gambling charges. Proper procedure is to assert privilege on tax return and not to fail to file or to list an illegal occupation]; Maness v Meyers, 419 US 449; Gilbert, Annotation, Loss of Privilege Against Self-Incrimination by Individual As Result of His Action or Inaction Occurring When He Was Not Accused — Supreme Court Cases, 47 L Ed 2d 922 [1976].)
The mere possibility of incrimination is insufficient to defeat the strong policies in favor of a disclosure called for by statute or in this case by regulation like the one challenged here. (California v Byers, 402 US, at 428, supra.) To excuse a police officer from reporting the discharge of her weapon would be analogous to excusing a physician from reporting a death because she might be accused of criminal negligence. (People v Samuel, 29 NY2d, at 263, supra.) This court finds that the Police Department regulation requiring a police officer to report the discharge of her firearm is not violative of the Fifth Amendment.
Yet even assuming that the duty of a police officer to report the discharge of her firearm violated Patterson’s right against compulsory self-incrimination, the court’s ruling would remain unchanged. Pursuant to the Administrative Code of the City of *794 New York, judicial notice of rules and regulations of New York City officers and agencies is mandatory. (Prince, Richardson on Evidence § 2-307 [Farrell 11th ed 1995], citing Sansivero v Garz, 20 AD2d 723, and Astrella v Schrader, 200 Misc 245; Administrative Code § 1-104 [a].)
Patrol Guide, Procedure No. 118-9 of the Police Department of the City of New York deals with "Interrogation of Members of the Services.” This regulation provides that if there is a likelihood that criminal charges may result from an investigation certain warnings should be given. The warnings provide in pertinent part as follows: "If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceedings”. Answers therefore may be compelled regardless of the privilege if immunity is granted of the use of the compelled testimony or its fruits in connection with a criminal prosecution against the person testifying. (Gardner v Broderick, 392 US 273, 276, citing Counselman v Hitchcock, 142 US 547, 585-586, and Murphy v Waterfront Commn., 378 US 52, 79.) Thus it is clear that Police Department regulations granting use immunity nullify any constitutional objections presented herein.

. At trial, it was never established what the argument was about and why it led to violence and shooting.

. The prosecutor sought to introduce into evidence three violations of Police Department regulations by Patterson, namely her failure to report a crime, her failure to safeguard her weapon, and her failure to report the discharge of her weapon. The prosecution contended that all three violations of department procedure were relevant to the tampering with physical evidence charge. The court ruled the failure to report the discharge of the weapon and the failure to report a crime to be relevant. In determining admissibility, the court found that the probative value of the evidence outweighed the potential for prejudice only for the failure to report the discharge of the weapon. (People v Molineux, 168 NY 264; People v Ventimiglia, 52 NY2d 350.)

. One ballistics expert testified that besides being cleaned, a firearm can fail to show evidence of discharge if it has been excessively oiled or placed in water. It was uncontroverted that the weapon contained a full magazine upon Patterson’s arrest. The weapon did not appear to have been excessively oiled.

. The trial court in Almodovar (supra) charged justification as to the attempted murder and assault count, but refused to so charge as to the weapons count. The court did, however, instruct the jury as to temporary and innocent possession of a weapon,