*16 OPINION OF THE COURT
Joseph N. Giamboi, J.
In this proceeding brought pursuant to CPLR article 78, the petitioners seek an order pursuant to CPLR 7803 (2) prohibiting respondents, Robert T. Johnson, as District Attorney, and the District Attorney’s office, of Bronx County, from performing or taking any further acts or proceedings to prosecute petitioners on the indictments and the charges contained therein upon the grounds that petitioners are immune from criminal prosecution and are being deprived of their right against compelled self-incrimination as secured by the Fifth and Fourteenth Amendments of the United States Constitution and by article I, § 6 of the New York Constitution. Petitioners further request that the court set the matter down for a hearing pursuant to CPLR 7804 (h) to determine: (1) if evidence obtained under threat of job forfeiture was used to obtain the indictment against the correction officers; (2) if evidence derived from the compelled testimony was used to focus on the petitioners; (3) if evidence derived from the compelled testimony was used to prepare the witnesses and testimony for the Grand Jury; and (4) if the compelled testimony was used in violation of various rulings of the United States Supreme Court. Respondents cross-move, pursuant to CPLR 7804 (f), for an order dismissing the petition on the objection in point of law that petitioners fail to demonstrate a clear legal wrong. In the event that the cross motion is denied, respondents state their intention to exercise their right to serve an answer to the petition. The petitioners’ application and respondents’ cross motion are decided as set forth below.
Petitioner Norman Seabrook is the elected president of the Correction Officers’ Benevolent Association, Inc. which is the collective bargaining representative for approximately 10,000 correction officers employed by the City of New York and the Department of Correction of the City of New York. It is alleged in the petition that petitioners John Mickel, John Barnes, Douglas Brophy, Henry Neil, and Maurice Gilliard are permanently appointed civil service correction officers who, under threat by the Department of Correction of job forfeiture, were compelled to provide evidence against themselves. It is further alleged that this evidence was then provided by the Department of Correction to the District Attorney of Bronx County who used that information to obtain indictments against the five officers in Supreme Court, Bronx County.
Petitioner Brophy was indicted on July 9, 1996 for the charges of assault in the third degree, falsifying business rec *17 ords in the first degree, and offering a false instrument for filing in the first degree. Petitioners Gilliard and Mickel were each indicted on September 20, 1996 for the charges of assault in the third degree, falsifying business records in the first degree, and offering a false instrument for filing in the first degree. On October 2, 1996, petitioner Neil was indicted for the charges of falsifying business records in the first degree and offering a false instrument for filing in the first degree. On October 4, 1996, petitioner Barnes was indicted for the charges of assault in the third degree, falsifying business records in the first degree, and offering a false instrument for filing in the first degree.
It is petitioners’ contention that the above indictments were the direct result of compelled evidence obtained, under threat of job forfeiture, during a departmental investigation conducted by the Department of Correction into allegations of misconduct allegedly committed by the five indicted petitioners during the course of their employment at the Central Punitive Segregation Unit at Rikers Island. It is stated in paragraph 11 of the petition that all five indicted officers had been required to provide incriminating evidence pursuant to Mayor’s Executive Order No. 16, which provides in pertinent part, in section 4 (b) as follows:
"4. Investigations
"(b) The Commissioner and, with the approval of the Commissioner, the Inspectors General and any person under the supervision of the Commissioner or the Inspectors General, may require any officer or employee of the City to answer questions concerning any matter related to the performance of his or her official duties or any person dealing with the City, concerning such dealings with the City, after first being advised th[at] neither their statement nor any information or evidence derived therefrom will be used against them in a subsequent criminal prosecution other than for perjury or contempt arising from such testimony. The refusal of an officer or employee to answer questions [under] the condition described in this paragraph shall constitute cause for removal from office or employment or [other] appropriate penalty.” The petitioners maintain, however, that they had not been advised prior to giving their statements, as required by section 4 (b) of Executive Order No. 16, that neither their statements nor any information or evidence derived therefrom would be used against them in a subsequent criminal prosecution.
In their memorandum of law, the petitioners appear to step back from the above argument as they seem to acknowledge *18 that Executive Order No. 16 is not directly applicable to their case. By way of analogy, however, petitioners urge that they are entitled to a grant of immunity similar to that available under Executive Order No. 16; they contend that when a public employee is compelled to answer questions or face removal upon refusing to do so the resulting responses are automatically cloaked with immunity.
The petitioners continue that in direct contravention of their constitutionally protected rights, the District Attorney’s office conveyed to the Grand Jury evidence obtained in whole or in part from compelled immunized statements or the leads derived therefrom, or was able to plan Grand Jury strategy and focus questioning based upon evidence derived from the compelled testimony. It is argued that since the indictments were derived from immunized evidence or leads, the indictments were fatally tainted and defective, in violation of petitioner’s rights against self-incrimination and their rights under due process and equal protection of law.
Pursuant to CPLR 7801 (2), the use of an article 78 proceeding to challenge a determination made in a civil action or criminal matter is generally precluded. The extraordinary remedy of prohibition, however, as embodied in CPLR 7803 (2), is a traditional exception to the above rule. Prohibition serves to prevent or control a body or officer acting in a judicial or quasi-judicial capacity from proceeding or threatening to proceed without or in excess of its jurisdiction (Matter of Town of Huntington v New York State Div. of Human Rights, 82 NY2d 783). Prohibition lies only when the petitioner has established a clear legal right to such relief (Matter of Molea v Marasco, 64 NY2d 718). Use of the writ of prohibition is never available merely to correct or prevent trial errors of substantial law or procedure, no matter how grievous. The orderly administration of justice requires that correction of litigation errors be left to the ordinary channels of appeal or review (La Rocca v Lane, 37 NY2d 575).
Even in those rare instances where an arrogation of power would justify burdening the judicial process with collateral intervention and summary correction, the writ of prohibition does not issue as of right, but only in the sound discretion of the court. In exercising that discretion, a court must weigh a number of factors, including the gravity of the harm caused by the act sought to be performed by the official; whether the harm can be adequately corrected on appeal; and whether prohibition would furnish a more complete remedy even though *19 other methods of redress are technically available (Matter of Rush v Mordue, 68 NY2d 348). Generally, the ordeal of a criminal trial and the possibility of conviction are, by themselves, insufficiently harmful to warrant use of the writ. However, prohibition may lie where the claim is substantial, implicates a fundamental constitutional right, and where the harm resulting from the challenged exercise of power could not adequately be redressed through the usual avenues of appeal (Matter of Rush v Mordue, supra).
Customarily, a proceeding seeking prohibition is initiated to control or inhibit courts or Judges. However, the remedy of prohibition may also lie against a prosecutor in performing the quasi-judicial role of representing the people in bringing those accused of crime to justice (Matter of Haggerty v Himelein, 89 NY2d 431; Matter of Schumer v Holtzman, 60 NY2d 46). Accordingly, the District Attorney and his office are proper parties in this proceeding.
Upon consideration of the papers and exhibits submitted on this proceeding, this court concludes that the petitioners have failed to establish a clear legal right, either in law or fact, to the extraordinary relief requested. Initially, it must be noted that Mayor’s Executive Order No. 16 is not directly related to this proceeding. That Executive Order, dated July 26, 1978, establishes the responsibilities and duties of the Commissioner of Investigation, heads of City agencies, and Inspectors General regarding investigatory powers. There is no allegation that the petitioners were questioned or interviewed under the Executive Order in question. Accordingly, the provisions of section 4 (b) of the Executive Order which require the furnishing of a warning to employees before questioning are inapplicable.
Even without the protection afforded by Executive Order No. 16, it would still offend the guarantee against self-incrimination to require a public servant to answer questions, even relating to the performance of official duties, upon the threat of dismissal, and to make use of the incriminating statements in a subsequent criminal prosecution. It is well-settled law that when a public employee is compelled to answer questions or face removal upon refusal to do so, the responses are cloaked with immunity automatically, and neither the compelled statements nor their fruits may be used against the employee in a subsequent criminal prosecution (Lefkowitz v Turley, 414 US 70; People v Corrigan, 80 NY2d 326). The resulting immunity that attaches when an employee is compelled to answer such questions thus flows directly from the Constitution, attaches by *20 operation of law, and is not subject to the employer’s discretion (Matter of Matt v Larocca, 71 NY2d 154, cert denied 486 US 1007).
Nonetheless, upon examination of the submitted record, this court determines that the written statements of the five indicted petitioners do not qualify as statements entitled to automatic immunity. The statements in issue are Department of Correction "Use of Force Reports”. Pursuant to the rules and regulations of the Department, such reports have to be completed by an officer involved either as a participant or a witness in a use of force incident against an inmate. In affidavits in support of the petition, each of the five indicted officers asserts that he was ordered by a superior officer, under threat of job forfeiture, to submit a written "Use of Force Report”. Each claims that at the time the report was submitted he believed that neither the statement nor any information or evidence derived therefrom could be used in a subsequent criminal investigation.
The court finds the affidavits of the individual petitioners to be essentially conclusory and self-serving in nature, particularly as to the alleged threat of job forfeiture. The Use of Force Reports” can be equated to incident reports. Officers involved in such incidents were required to complete the written report, but such filing did not serve, in and of itself, to make them targets of investigation. Moreover, not all affirmative duties to report are violative of the privilege against self-incrimination. For example, "hit and run” statutes requiring a driver involved in an accident to stop at the scene and provide a name and address do not violate the constitutional right against self-incrimination (California v Byers, 402 US 424; People v Samuel, 29 NY2d 252). The distinction must be drawn between self-reporting requirements involving lawful and unlawful activities. Statutes focusing on criminal activity have been struck down or limited. Self-reporting statutes designed only to regulate lawful activities and channel such activities into lawful behavior have been sustained as valid, despite the incidental risk of inculpation to those who engage in misconduct (People v Samuel, supra; People v Patterson, 169 Misc 2d 787). In the instant case, the self-reporting requirement imposed by the Department of Correction for the filing of a "Use of Force Report” clearly relates to the regulation of lawful activity, and is not designed to incriminate. The Department’s regulation has only an incidental effect to inculpate. The mere possibility of incrimination is insufficient to defeat *21 the strong policies in favor of disclosure in instances where force is used. The court notes that the "Use of Force Report” is clearly designed, at least in part, to protect the interests of the individual officer as well as the Department and includes space for the officer to list any claimed injuries. The court determines that the Department’s reporting regulation is not in violation of petitioners’ constitutional rights.
Two of the indicted officers, Henry Neil and Maurice Gilliard, further assert in their affidavits that they had been, subsequent to the date of the force incident, questioned by members of the Federal Bureau of Investigation and the New York City Department of Investigation. Petitioner John Mickel adds that he had been questioned at depositions within the context of pending civil litigation. These petitioners again assert their belief that they would be dismissed from employment if they did not respond to such questioning. As to the additional investigations allegedly conducted by the Federal Bureau of Investigation and by the City Department of Investigation, petitioners have an adequate remedy within the context of the pending criminal cases as they may request a Kastigar hearing to determine whether the prosecution made any use of either a compelled, immunized statement or any evidence derived directly or indirectly from such a statement (Kastigar v United States, 406 US 441). There has been no showing of any possible incrimination arising from the civil litigation. The court further notes that all five petitioners have the opportunity to challenge the allegedly improper use of purportedly immunized statements in the course of the criminal matters. Indeed, petitioner Brophy has already moved to dismiss the indictment against him, inter alia, on the ground that the "Use of Force Report” is an immunized statement or, in the alternative, for a Kastigar hearing. Justice Roger S. Hayes, in a decision dated January 24, 1997, denied petitioner Brophy’s motion and noted that all of the allegations in the "Use of Force Report” may be used against him, where it is charged that the allegations themselves are materially false.
Accordingly, even if petitioners’ statements in their "Use of Force Reports” were deemed to have initially been provided with a cloak of immunity, that immunity would dissolve in the face of false allegations being filed. It is well-settled law that one who is granted immunity in return for his testimony receives no license to swear falsely with impunity under the protection of that immunity (United States v Apfelbaum, 445 US 115; People v Shapiro, 50 NY2d 747). Such immunity would *22 not, thus, preclude the charges made for falsifying business records and offering a false instrument for filing.
In light of the above, the court finds no clear legal right to the relief requested. It is noted, moreover, that the assault charges are clearly not based on the petitioners’ own statements. Furthermore, other avenues for relief are available to petitioners, by way of motion during the pendency of the criminal matters or by appeal of any subsequent convictions. Respondents’ cross motion to dismiss is granted. The petition is denied, and the proceeding is dismissed.