## WAYNE MAURICE BYRD *v.* STATE OF MARYLAND

[No. 166, September Term, 1971.]

*Decided October 28, 1971.*

The cause was submitted on briefs to THOMPSON, POWERS and GILBERT, JJ.

Submitted by *Thomas J. Aversa, Jr.,* for appellant.

Submitted by *Francis B. Burch, Attorney General, Josef Rosenblatt, Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Bright K. Walker, Assistant State's Attorney for Baltimore City,* for appellee.

GILBERT, J., delivered the opinion of the Court.

A five car collision at the intersection of Paca and Franklin Streets, in Baltimore City, led to the indictment and conviction of Wayne Maurice Byrd, appellant, age 17, for unauthorized use of a motor vehicle.[1]

Judge Paul A. Dorf, sitting without a jury, after finding the appellant guilty, sentenced him to a term of four years under the jurisdiction of the Department of Correctional Services.

On appeal from the judgment of the Criminal Court of Baltimore, the appellant asserts that two errors were committed by Judge Dorf, (1) that statements allegedly made by appellant were received into evidence in violation of the rule of *Miranda* [v. Arizona, 384 U. S. 436], and (2) that the evidence was legally insufficient to convict.

## THE FACTS

James P. McDuffie testified that on November 11, 1970, he was the owner of a light blue, black top, 1962 Chevrolet convertible, valued at $500.00. He parked his vehicle in front of his residence in southwest Baltimore at

---

\* Note: *Certiorari* denied, Court of Appeals of Maryland, January 10, 1972.

1. The Division for Juvenile Causes of the Circuit Court of Baltimore City waived jurisdiction on November 25, 1970.

approximately 11:00 a.m., and found it gone at 11:15 a.m. He said that he had not given anyone permission to drive his automobile.

The next day, November 12, 1970, Officer Jerry Birenbaum of the Traffic Division of the Baltimore City Police Department was "tagging cars in the middle of the block between Eutaw and Howard Streets, and I observed this five car accident. At that time I saw the car, the Chevrolet proceeded west on Franklin Street, crossed an automatic signal which was red, and strike a white Peugeot. I then observed a subject [appellant] run from the scene of the driver's side of the vehicle." The officer gave chase, as did a Mr. Caldwell, who was the owner of the white Peugeot. The officer returned to the scene of the accident and called two ambulances because eight people were hurt. Apparently as a result of the impact between the Chevrolet and the Peugeot, three other vehicles were struck. Mr. Caldwell returned to the scene with the appellant. After assisting in the placing of two injured persons in an ambulance, Officer Birenbaum "went back to Mr. Caldwell, who was holding Mr. Byrd." The transcript reveals the following:

"Q [By Mr. Walker] Officer, had you asked the Defendant any questions?

A No, not at the scene of the accident.

Q Was the Defendant in your custody?

A No, sir, he wasn't.

Q And, who asked the Defendant a question?

A Nobody asked the Defendant a question. I asked him where his driver's license and registration was for the vehicle.

* * *

THE WITNESS: At that time he stated —

Q [By Mr. Walker] To whom, Officer, did he state?

A He stated, just to the crowd, 'I didn't mean to have the accident, and I didn't mean to steal the car; get me away from this man.'

Q And, who was this man he was referring to?

A Mr. Caldwell."

The officer also testified that after the appellant had been moved to the Pine Street Station, he advised the appellant of his [appellant's] *Miranda* rights, and had him execute the "Explanation of Rights" form used by the Baltimore City Police Department.[2] Appellant's mother, who was present at that time, signed the "Explanation of Rights" as a witness. Appellant orally denied at that time stealing the car, but according to the officer, stated that he was driving it. The appellant, by his own testimony, in addition to denying stealing the car and making any statement relative to the same, also denied that he stated that he was the driver. His version of the events leading to his apprehension was that he was a passenger in the vehicle after having been offered a ride by "Jack." Appellant did not know "Jack's" last name, nor address. He told Judge Dorf that he had been given a lift on November 12th by "Jack" and another boy. He said, "Well, at first I was skeptical about getting into the car, and so I asked him to show me some kind of thing that this car belonged to him. So, he showed me a registration card and his driver's license, so I just went on with him then." Appellant seated himself in the back seat of the motor vehicle.

The appellant also testified that Officer Birenbaum had

---

2. This form sets forth the rights stated by *Miranda,* supra.

interrogated him at the scene concerning whether or not the car was stolen and advised him to admit that he was the driver because there were two witnesses to that fact. The appellant stated that he denied both allegations. He said that he was caught in flight by Mr. Caldwell, but not by the officer. The reason the appellant gave for running from the scene of the accident was "because of the fact I was on parole and I guess the odds would turn against me anyway if I would stayed, if I would said I didn't do it."

## ADMISSIBILITY OF THE STATEMENTS

Appellant argues that the statement, "I didn't mean to have the accident, I didn't mean to steal the car; get me away from this man," should not have been received into evidence because it was made while he was being held by Mr. Caldwell. "This occurred prior to the officer advising the Appellant of his *Miranda* rights, * * *." He says that the State must "affirmatively show that the appellant was not questioned, threatened or in any manner coerced into making the alleged statements." Apparently appellant seeks to equate his restraint by Caldwell to police custody.

We do not think *Miranda* is applicable to the case at bar. The detention by Mr. Caldwell was not custodial. When the appellant, in response to a request for his driver's license and registration card, blurted out, "* * * I didn't mean to steal the car * * *," the statement was not the result of a police interrogation. Asking for a driver's license and registration card cannot, under the circumstances here present, be held to be a custodial interrogation within the meaning of *Miranda*. This Court has held that an individual is not placed in an arrest status solely because a police officer sought to verify his registration card and driver's license. *Taylor v. State,* 9 Md. App. 402 (1970). The request for the driver's license and the registration card by the officer, under the authority of Article 66½, § 6-112 and § 3-409, of the Maryland Code [the Motor Vehicle Statute] was not a

protected confrontation within the ambit of the federal constitution. The Motor Vehicle Code, while it may contain some sections which provide that violations of its provisions are felonies, is essentially a regulatory statute for the purpose of controlling motor vehicular traffic upon the streets and highways of this state, and is not criminal in nature.[3] The production of a driver's license and a registration card is an essentially neutral act. "Whatever the collateral consequences of disclosing name and address, the statutory purpose is to implement the state police power to regulate use of motor vehicles." *California v. Byers*, 400 U. S. 813, 91 S. Ct. 1535, 29 L. Ed. 2d 9 (1971). In *Byers, supra*, the Supreme Court held that there was no constitutional right to flee from the scene of an accident and that a California statute requiring [as does Maryland] that a motorist stop and identify himself, was not a form of self-incrimination within the scope of the Fifth Amendment.

In *Richardson v. State*, 6 Md. App. 448 (1969), Richardson, while being advised of his constitutional rights by way of a *"Miranda* card" stated, "I did not rape that girl. She gave in to me voluntarily." Again while the card was being read to Richardson, he said, "I do want an attorney, but my story will be the same. I did not rape that girl." And then he reiterated what he had previously said about the woman's voluntary submission. Judge Morton, speaking for this Court, said:

> "It is next contended that the appellant's statement was erroneously admitted because 'there was no showing by the State that prior to his making said statement he had waived his constitutional rights against self-incrimination and his right to retained or appointed counsel.' He points to the language of Chief Justice Warren in *Miranda v. Arizona*, 384 U. S. 436, to the effect that 'a heavy burden rests on the government to demonstrate the defendant knowingly

---

3. E.g. §§ 4-103; 4-107 (b) (d); 4-110.

and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.' And he argues that under the mandate of *Miranda* the relinquishment of the privilege 'cannot be presumed from the mere silence of the defendant after being warned of his rights.'

"This argument overlooks the fact, however, that the entire thrust of *Miranda* was directed toward custodial interrogations. It was stated: 'We deal with the admissibility of statements obtained from an individual who is subjected to custodial police interrogation * * *. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' *It was further held that 'volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.'* In the case at bar, there can be no question that the appellant was in police custody at the time the statement was given; but it is equally clear that the statement was not the result of 'questioning initiated by law enforcement officers * * *.' On each occasion that the appellant gave the statement, it occurred at a time when the police officer was reading the warning to him from the card. It is apparent that the appellant simply interrupted the officer and 'blurted out' or 'volunteered' the statement. The officer had not asked him any questions concerning the crimes for which he was arrested; interrogation, in the sense contemplated by *Miranda,* had not begun. Thus, we find that the argument advanced by the appellant concerning waiver of his privilege against self-incrimination is not well taken in view of the factual setting in which he gave the

statement. See *Bazzell v. State*, 6 Md. App. 194; *King v. State*, 5 Md. App. 652; *Howell v. State*, 5 Md. App. 337; *Campbell v. State*, 4 Md. App. 448; *Carwell v. State*, 2 Md. App. 45, 50; *Gaudio and Bucci v. State*, 1 Md. App. 469. Cf. *Hale v. State*, 5 Md. App. 326 [where the so-called *Miranda* card was not offered in evidence]." [Emphasis supplied].

We hold that the appellant's voluntary and spontaneous utterance at the scene of the accident is without the sphere of influence of *Miranda*, and was properly admitted into evidence by Judge Dorf.

The question as to whether or not the appellant said or didn't say that he was the driver of the vehicle, after having been apprised of his rights under *Miranda*, was a matter of credibility. The weight of the evidence and the credibility of the witnesses is a matter for the determination of the trial judge, and will not be disturbed on appeal unless clearly erroneous. Rule 1086. *David v. State*, 1 Md. App. 666 (1967), *Williams v. State*, 11 Md. App. 350 (1971), *Folk v. State*, 11 Md. App. 508 (1971), *Frankis v. State*, 11 Md. App. 534 (1971), *Polisher v. State*, 11 Md. App. 555 (1971).

The trial judge was not clearly erroneous.

### THE SUFFICIENCY OF THE EVIDENCE

The evidence indicated that the owner of the vehicle, James P. McDuffie, had parked the same in front of his residence at 11:00 a.m. on November 11, 1970. Fifteen minutes later, his vehicle was gone. The identical vehicle was involved in the collision at Paca and Franklin Streets at approximately 1:30 p.m. the next day. The appellant, the officer said, alighted from the driver's side and fled. He was apprehended and returned to the scene by Mr. Caldwell. His voluntary admission that he had "stolen" the automobile is, coupled with the fact that the vehicle was in fact taken, sufficient to convict. Judge Dorf was not required to believe the appellant's in-court nar-

rative.[4] *Rice v. State,* 9 Md. App. 552 at 567, *Munger v. State,* 7 Md. App. 710, 712 (1969), *Ball v. State,* 7 Md. App. 219, 222 (1969), *Jones v. State,* 11 Md. App. 468 (1971), *Williams, supra.*

The test of the sufficiency of the evidence is,

"* * * whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged." *Coward v. State,* 10 Md. App. 127, *Frankis, Jones,* and *Folk, supra.*

The evidence was legally sufficient to convict.

*Judgment affirmed.*

4. The trial of this case commenced on January 21, 1971. Judge Dorf, after hearing the State's case on that date, continued the matter until January 28, 1971, in order for the defense to locate witnesses that appellant desired, but was unable to find. The witnesses included the "two people that were supposedly with me [appellant] on that day."