## ANNE ARUNDEL COUNTY, MARYLAND ET AL.
## *v.* WHITEHALL VENTURE ET AL.

[No. 865, September Term, 1977.]

*Decided April 13, 1978.*

The cause was argued before THOMPSON, LOWE and COUCH, JJ.

*John M. Court, Assistant County Solicitor for Anne Arundel County,* with whom was *Michael R. Roblyer, County Solicitor,* on the brief, for appellants.

*William C. Mitchell, Jr.,* with whom was *C. Bowie Rose* on the brief, for appellees.

COUCH, J., delivered the opinion of the Court.

This appeal involves the propriety of the issuance of a mandatory permanent injunction by the Circuit Court for Anne Arundel County enjoining the appellants, Anne Arundel County and the Board of Public Works of Anne Arundel County (hereinafter "the County") from permitting or constructing an eight inch diameter sewer main along the south side of Route 50 at Whitehall Road, and commanding the County to immediately remove the eight inch diameter sewer main already constructed and to replace it with at least a ten inch diameter sewer main, rendering available sewer service by gravity to the greatest possible portion of appellees' abutting property.

Appellees are the owners of approximately 75 acres of land south of U. S. 50, south and west of its intersection with Whitehall Road, in Anne Arundel County. This controversy involves approximately 15 acres of this land, which acreage lies in the westerly portion and fronts on Route 50. This property is zoned partially C-3 and partially R-2. Because of the contour of the ground approximately 70% of the acreage lies about 20 feet above the high mean water level with the ridge line running diagonally across in a northwest-southeast direction.

In 1973 appellees entered into negotiations with the County to bring, at the expense of appellees, an extension of its sewer main, which ran parallel to Route 50 on its north side, to its south side, apparently to service a gas station at the southwest corner of Route 50 and Whitehall Road. The County required appellees to furnish design plans after criteria had been established. The final agreement was executed in 1974 and the project was begun and completed. The project consisted of bringing an 18 inch main under Route 50 from north to south with a twelve inch main running west for some 100 feet and a 15 inch main running east. The County later installed a 15 inch main, running some 300 feet south on Whitehall Road, to serve another owner. Part of the design

criteria required by the County was that "the sizing of the carrier pipe and sleeve shall be based on the peninsula drainage area bounded by Rte. 50 on the north and extending approximately 1800 feet west and 1300 feet east of the intersection of Whitehall Road and Rte. 50." (It appears that the land in the area south of Route 50 around its intersection with Whitehall Road formed a peninsula.) The design information furnished to the County by appellees' engineers proposed two pumping stations to serve that portion of the drainage area lying west of the ridge line (20 foot contour line), leaving the portion lying east thereof to be served by gravity. The gas station project was abandoned, and there are no improvements on any of appellees' property, nor are there any applications for any sewer service thereto.

In 1976 the owners of Whitehall Inn, a restaurant located on the south side of Route 50 and east of appellees' property, began to experience difficulty with their septic system and, together with certain owners of the property immediately to their east, filed a petition with the County to extend the sewer main on the south side of Route 50 to this property. In early 1977 the County's Health Department declared the existing septic system a public nuisance and requested the County's Public Works Department to expedite the requested extension.

While this petition was pending, appellees made application to the County Council for an amendment to the County's Master Water and Sewer Plan to put an "Immediate Priority" classification on plans for sewer service to all of their property in the area. This amendment was subsequently approved by the Council over the County Executive's veto. Thereafter, a public hearing on Whitehall Inn's petition for extension was held, at which appellees' trustee appeared and requested that gravity sewer service be made available to the property owned by appellees which lay west of Whitehall Inn and which was not included in the petition. Subsequently, there were meetings between appellees and representatives of the County's Public Works Department concerning the plan to install an eight inch main. Appellees desired either a twelve inch or ten inch main, contending their property could

not be gravity serviced by an eight inch main (thus requiring a pumping station). The County rejected appellees' request and began construction of the eight inch main. Appellees immediately sought and obtained an *ex parte* injunction, causing the County to cease construction. The *ex parte* injunction was twice extended and then expired, whereupon the County resumed construction and completely finished the project before the court heard the matter of a permanent injunction on its merits. The chancellor granted the injunctive relief requested by appellees, and the County took this appeal.

Appellant presents five questions and appellees present four for our review. We find it unnecessary to answer each question presented individually in light of our answer to the question of whether the chancellor abused his discretion in issuing the mandatory injunction.

It is well established that the right to an injunction is not *ex debito justitiae*,[1] and that the application for an injunction is addressed to the sound discretion of the chancellor. *Williams v. Mayor and City Council of Baltimore,* 128 Md. 140, 97 A. 140 (1916). Our review of the propriety of the issuance of an injunction is confined, therefore, to whether the chancellor abused his sound discretion.

We note further that the exercise of that sound discretion in issuing a mandatory injunction is to be exercised only with extreme caution. *Baltimore & Phila. Steamboat Co. v. Starr Methodist Protestant Church,* 149 Md. 163, 130 A. 46 (1925). An injunction is to be issued only where the intervention of equity is necessary to prevent an irreparable injury. *Coster v. Dept. of Personnel,* 36 Md. App. 523, 526, 373 A. 2d 1287, 1289 (1977). The "very function" of an injunction is to prevent *irreparable injury,* and " . . . the remedy will not be awarded where it appears to the satisfaction of the court that the injury complained of is not of such character." *Id.* at 526, 373 A. 2d at 1289.[2]

---

1. From or as a debt of justice; in accordance with the requirement of justice; of right; as a matter of right. * * * (q.v.) 3 Bl. Comm. 48, 67.

2. Traditionally, the non-existence of an adequate remedy at law was a prerequisite to injunctive relief. An adequate remedy at law in the form of damages is, at present, not an absolute bar to injunctive relief. Md. Rule BB-76.

The mere existence of an injury, however, even if irreparable, is no guarantee that injunctive relief will issue. The existence of some *right,* which will be irreparably injured, is a prerequisite to the *extraordinary* relief of an injunction. *Mayor and City Council of Balt. v. Employer's Ass'n.,* 162 Md. 124, 159 A. 267 (1932).

With respect to issuance of an injunction generally, Symons, *Pomeroy's Equity Jurisprudence* (5th Ed. 1941), § 1338, states:

> "In determining whether an injunction will be issued to protect any right of property, to enforce any obligation, or to prevent any wrong, there is one fundamental principle of the utmost importance, which furnishes the answer to any questions, the solution to any difficulties which may arise. This principle is both affirmative and negative, and the affirmative aspect of it should never be lost sight of, any more than the negative side. The general principle may be stated as follows: *Whenever a right exists or is created, by contract, by the ownership of property or otherwise, cognizable by law,* the violation of that right will be prohibited, unless there are other considerations of policy or expedience which forbid a resort to this prohibitive remedy." (Emphasis added.)

*See also Coster v. Dept. of Personnel, supra* at 526, 373 A. 2d at 1289.

Our review of the chancellor's exercise of his discretion in granting the mandatory injunction, in light of the principles set out above, and within the confines of Maryland Rule 1086, leads us to the conclusion that because appellees possessed no cognizable *right* that had been denied or adversely affected, the chancellor abused his discretion.

At the outset, it must be made clear that the issue before this Court and the chancellor below is not whether appellees are being deprived of any and all sewer service to their property as a result of the eight inch pipe. Both parties agree that the eight inch pipe would be sufficient to provide sewer

service to all of appellees' property, if a pumping station were installed.

The real issue presented in this case is whether the County, by laying an eight inch pipe, has invaded or denied some property, contractual or legal right possessed by appellees. This issue is, in itself, two issues: whether the appellees possessed a right to gravity flow sewer, and whether, by laying pipe that precludes gravity flow to appellees' property, the County has invaded some other right of appellees.[3]

The chancellor apparently concluded that the character of the public improvement resulted in an invasion of property rights in that it will not provide sewer service to the entire property without a costly pumping station. The cost of this station, according to the chancellor, would equal or exceed the value of the land. The result would be to make the land monetarily unsellable with any degree of profit, *and* prevent use of the land under its present zoning classification.

The record does not support the chancellor's findings of fact that the cost of the pumping station precludes a reasonable profit, and that the cost of the pumping station exceeds the value of the land. The only testimony as to the value of the land was that it could be sold for $120,000 to $135,000. Compared with the accepted $75,000 cost of the pumping station, the value of the land far exceeds the expense of the pumping station. There was no other testimony as to the lack of profitability, or the inability to sell the land. The chancellor's findings are unsupported by the record, and therefore his findings that the use and saleability of the land are adversely affected by the County's actions are clearly erroneous.[4]

3. The questions are similar, but not synonymous. The former, on which appellees chiefly rely, is that they have a direct right to gravity flow. The latter question, on which the trial court relied, is that appellants' choice of pipe size adversely affects a property right — use and enjoyment — held by appellees, a more indirect effect.

4. In actual effect, the pumping station would likely facilitate the use of the land. It will provide adequate service to the entire fifteen acres. There is some doubt as to the sewerability of a portion of that tract by gravity, even if the ten or twelve inch pipe were to be laid.

As to the cost of the pumping station, appellees, or whoever develops the land, will be able to recover some of the cost as credits against various capital connection charges and assessments, when the land is developed. § 17-611 of the Anne Arundel County Code.

Regardless of the cost of the station in relation to the value of the land, appellees made no showing that that high cost interfered with their present use of the land. Appellees' position is that the cost of the pumping station interferes with their future ability to develop the land at its present zoning classification. This asserted "invasion" of their property rights is at best highly speculative. Appellees have failed to show present plans or preparations for such development. As the Court of Appeals said in *Kennedy-Chamberlin Co. v. Snure,* 212 Md. 369, 378, 129 A. 2d 142, 147 (1957), "The evidence in this case does not reveal any present invasion of property rights of the appellants."

Appellees argue that regardless of whether a property right was adversely affected by the County's actions, they have a right to a particular type of sewer service — gravity flow.

In general, appellees possess no right to a particular type of sewer service simply by virtue of their ownership of sewerable land. In *Kennedy-Chamberlin Co. v. Snure,* the Court of Appeals said:

> "The propriety, extent and character of public improvements which lie within the discretion of municipal authorities are not subject to judicial interference unless exercised arbitrarily, oppressively or fraudulently, and they result in invasion of property rights."

*See also* 13 McQuillen, *Municipal Corporations* (3rd Ed., 1971 Rev. Vol.), § 37.25. Of itself, there is no right to a particular type of sewerage. The County's choice of a particular size pipe can be interfered with by the courts only if the improvement as constituted invades some property right, (a contention we have already rejected) or if there is some legal or contractual right to a particular type of improvement.

Appellees have noted in their brief that their property was included in the "Immediate Priority" classification for sewerage priority by Amendment 11 to County Council Bill 139-76. Appellees contend that this classification in effect means the property is sewerable by gravity.

This classification does not provide a "right" to gravity service. The definition of "immediate priority", as provided in the County comprehensive plan for sewerage and water supply, adopted in § 13-400 (1) of the Anne Arundel County Code, amended by Bill 139-76, is "A work or works . . . for which the beginning of construction is scheduled to start within two years following the working date of the plan . . . ." Of itself, classification of a project as "Immediate Priority" does not give a "right" by operation of law to gravity sewer service.

As we have mentioned, appellees' chief reliance in this case is on the existence of a contractual or quasi-contractual right. This "right" is based on appellees' actions in bringing the sewer line from the north to the south side of Route 50. Those actions were based on an agreement made between the County and appellees, which would furnish appellees a contractual "right". That "right", however, is encompassed by the agreement.

The evidence introduced supports a finding that the "right" which appellees possess by virtue of that agreement is only to adequate sewer service to its property. The record does not support a finding that the agreement contemplated the type or manner of sewer service to appellees' property. Appellees concede that the eight inch pipe can provide adequate service, if a pumping station is provided. Given that concession, there is no denial or adverse effect on appellees' contractual right to adequate service by the County.

In a similar vein, appellees argue that appellants are estopped from laying an eight inch pipe. Appellees contend that they took actions in bringing the sewer line to the south side of Route 50, to their financial detriment, relying on the representations made by the County or its agents. *City of Balt. v. Crane,* 277 Md. 198, 352 A. 2d 786 (1976). Whether couched in terms of "contract" or "estoppel", the record shows only a representation by the County that they would lay pipe of sufficient size to provide adequate service to appellees' land. As we have said, adequate service can be provided by the-present eight inch pipe, if a pumping station is provided. The appellees point to no evidence in the record

of a representation by the County as to the type or manner of that service.

In their brief appellees cite several cases from this and other jurisdictions where courts have applied an estoppel against a municipal corporation. *City of Baltimore v. Crane, supra; Gaver v. Frederick County,* 175 Md. 639, 3 A. 2d 463 (1939); *City Railway Co. v. Citizen's Street Ry. Co.,* 166 U. S. 557, 41 L. Ed. 1114, 17 S. Ct. 653 (1897); *State ex inf. McKittrick v. Springfield City Water Co.,* 345 Mo. 6, 131 S.W.2d 525 (1939); *Bregar v. Britton,* 75 So. 2d 753 (Fla. 1954); *City of Naples v. Crans,* 292 So. 2d 58 (Fla. App. 1974); *State ex rel. A. Hynek & Sons Co. v. City of Racine,* 267 Wisc. 309, 64 N.W.2d 741 (1954); *State ex rel. Cox v. McIlravy,* 105 Neb. 651, 181 N. W. 554 (1921); *Russell Dairy Stores v. City of Chippewa Falls,* 272 Wisc. 138, 74 N.W.2d 759 (1956).

We have no quarrel with the basic proposition that a municipal corporation may be estopped from taking certain actions. But the cases cited by appellees are distinguishable from the case at bar in one important aspect. In those cases, the municipal corporation was estopped from taking action contrary to an express or implied representation. Here, appellees attempt to estop the County from taking an action *not* contrary to any express or implied representation already made by the County. The size of the pipe was never a subject of an implied or express representation by the County. Therefore, in contradistinction to those cases cited, appellees cannot be said to rely on such a representation.

In terms of estoppel, there is an additional reason why the appellees have failed to establish a right to gravity service. To rely on a representation so as to create an estoppel, the relying party must have had a right to rely. *Chesapeake Homes, Inc. v. McGrath,* 249 Md. 480, 240 A. 2d 245 (1968). The record shows the appellees' own engineer, in proposing the sewerage plan that was drawn as a basis for the original agreement to bring sewerage to the south side of Route 50, contemplated two pumping stations would be needed. Assuming for the moment that the County represented that gravity flow would be provided, appellees had no right to rely on these representations in the face of their engineer's report.

In summary, the record fails to support a finding that the County, by laying eight inch pipe, has denied or adversely affected a *right* — contractual, property, or by operation of law — of the appellees. Without such denial of a *right,* we must hold that the chancellor abused his discretion in granting the injunctive relief below.

Inasmuch as the chancellor dismissed the County's counterclaim for damages on the basis that appellees were entitled to injunctive relief, reversal of the chancellor as to the propriety of the injunction dictates reversal as to the dismissal of the counterclaim. We shall remand the case for a hearing on the County's entitlement to recover damages on the counterclaim.

> *Decree reversed; injunction dissolved; remanded for ruling on appellants' counterclaim.*
> *Costs to be paid by appellees.*