VERNON R. COURTNEY *v.* JOHN HENRY RICHMOND

[No. 1557, September Term, 1982.]

*Decided July 12, 1983.*

The cause was argued before LISS and BISHOP, JJ., and JOSEPH I. PINES, Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Melvin Hoffman* for appellant.

*Allen W. Cohen,* with whom were *Goodman, Cohen & Bennett, P.A.* on the brief, for appellee.

BISHOP, J., delivered the opinion of the Court.

The appellant, Vernon R. Courtney, filed in the Circuit Court for Anne Arundel County a Petition for Adoption of his step-daughter, Lamanda Delores Richmond. Appellant's wife, Mary Ellen Courtney, the child's biological mother, joined in the petition, consenting to the adoption, but reserving her rights. The appellee, John H. Richmond, the biological father of the child, filed a "Counter-Claim and Cross-Petition to Establish Visitation Rights" containing a prayer for reasonable visitation to "include eight (8) weeks during each summer and alternating Christmas holiday periods," and a prayer for general relief. In response to this latter pleading, Mary Ellen Courtney filed an answer and cross-petition along with a petition to hold John H. Richmond in contempt of court for his failure to make support and maintenance payments, the arrearage of which amounted to $7,200.00 as of March 31, 1982. The chancellor (Goudy, J.) made the following rulings:

1. Denied the petition for adoption.

2. Granted the appellee visitation rights.

3. Refused to hold the appellee in contempt.

The appellant raises two basic questions:

Did the chancellor err in refusing to grant the adoption?

Did the chancellor err in refusing to hold the appellee in contempt?

## The Adoption

Lamanda was born on December 18, 1974, as a result of the marriage of the appellee and the wife of the appellant. Lamanda's natural parents had a rather stormy marriage, which culminated in a final separation in the spring of 1976, when Lamanda was less than eighteen months of age. On October 23, 1975, some months before the final separation, the mother enlisted in the National Guard. While the mother was on active duty with the National Guard before the separation, either the paternal grandmother or a baby-sitter cared for Lamanda. After the separation, in July 1976, when Lamanda was eighteen months old, her mother went on active duty with the United States Army. Thereafter, for about one year the maternal grandmother cared for the child, who received regular support payments from her mother. The appellee sent either no money, according to the grandmother, or $50.00 or $75.00 per month according to the appellee. As a result of an action instituted by the wife, the Richmonds were divorced on March 17, 1978, by the District Court of Gary County, Kansas. The decree provided for child support, alimony, attorney's fees and court costs. Appellee received a copy of the decree and he was aware that he had been ordered to support Lamanda.

Sometime thereafter the mother received an overseas assignment to Germany. The father offered to care for Lamanda, but the mother refused, stating that she would not go overseas without the child. Lamanda was taken to Germany and remained there with her mother until June 1981, when she was flown home to spend some time with her maternal grandmother. Her mother returned in July 1981 and the appellant in August 1981. While overseas the

mother and the appellant had married on June 28, 1979, in Copenhagen, Denmark.

The chancellor filed the following Memorandum of Opinion and Order on August 16, 1982:

"Vernon R. Courtney petitioned this Court to adopt LAMANDA DELORES RICHMOND, born in Missouri, on December 18, 1974. She was the natural daughter of JOHN HENRY RICHMOND and MARY-ELLEN FRANCES RICHMOND who were married on October 5, 1974, but divorced by Decree of the District Court of Gear County, Kansas on March 17, 1978. The mother has now married the Petitioner and joined in the Petition for Adoption.

The Divorce Decree granted custody to the mother and granted visitation to the father.

Since the Decree, visitation and contact with the child has been minimal. He saw the child only once until the filing of these adoption proceedings. He then re-established contact. He has not seen the child but has talked to her on the phone. They have exchanged letters and other correspondence. The Decree ordered the father to pay $150.00 per month in child support. He has not done so. He started making child support payments in December of 1981 after being advised of these proceedings. Since December he has made payments totaling $775.00.

Vernon R. Courtney presented himself as a mature adult who has married the Mother and established a close relationship with the child. He is earnestly concerned with the child's welfare and there is no contest that he would be a fit Father.

Mary-Ellen Courtney supports her present husband's plea. She separated from her ex-husband in 1976, had sporadic reconciliations but was divorced in March of 1978. In 1976, she joined the Army and was sent to Europe where she met Mr. Courtney. She took the child with her which prevented the

natural Father from visiting. The child did not return to the States until June of 1981 when she stayed with her maternal grandparents in California.

The child knows of her father, has talked with him at times over the phone and has exchanged correspondence and photographs. She calls both Mr. Courtney and her natural Father, Daddy.

John Richmond is 30 years old, still in school, employed as a surgical technician and taking nursing courses in his local community college in Midwest City, Oklahoma. He states he paid some support to the maternal grandmother but if he did this Court finds the amount very small and inadequate. He says he sent some letters and packages to the child but they were returned. He does not have the returned letters nor does he have the returned cancelled checks he claims he used for support. He says he did not send support to the child while she was out of the country due to legal advice. The Court disbelieves this. He now lives in a two bedroom house with a fenced backyard. He did not see the child for the last three to four years because she was in Europe.

The Court continued the matter to review the Department of Social Services investigative report which was not available at the time of hearing. It was ultimately received on July 8, 1982 and confirms the Court's previous findings of Mr. Courtney's fitness. The Department recommends adoption, however, it is noted that this recommendation was made without the benefit of interviewing the natural Father.

The question before the Court is whether the consent to adopt has been withheld contrary to the child's best interest. The evidence must be such that it is clear and convincing before the rights and relationship of both child and parent will be

disturbed. The Court finds the evidence fails to meet this test and will, therefore, deny the adoption.

The father and child relationship having been maintained it is important that visitation be established. This must be done gradually but with tact. The Court will, therefore, order a one week visit in the summer of 1982, provided that prior to the said visit the father visit with the child for two days. Visits will also be ordered for a one week period on alternate Christmases beginning with Christmas 1982. If the child shall be taken out of state, the father is to pre-pay the child's transportation. Starting with the summer of 1983, the visits shall be for the period of thirty days and for a like period each summer thereafter.

The Court finds the form [sic] inappropriate for the determination of Contempt.

It is, therefore, this 16th day of August, 1982, by the Circuit Court for Anne Arundel County,

ORDERED, the Petition for Adoption is hereby denied, and it is further,

ORDERED, the Father shall be granted visitation with the child for the period of one week (seven days) during the summer of 1982, provided the Father visit the child for a two day period before the one week visit. The Father shall have alternate Christmas visits for a period of one week beginning the Christmas of 1982. The Father shall bear all transportation expenses of the child and pre-pay the same . . . ."

Based on our review of the testimony, we cannot hold that the factual findings of the chancellor were clearly erroneous, as we must for us to arrive at a different factual conclusion. Maryland Rule 1086. *Coffey v. Department of Social Services,* 41 Md. App. 340 (1979).

In spite of the foregoing, we shall remand since the chancellor did not appear to have applied the facts to the law in force at the time of his order. Section 77 of Article 16, Annotated Code of Maryland (1981 repl. vol., 1982 cum. supp.) is a part of the general revision of our adoption laws, contained in Chapter 514, Acts of 1982, which became effective on July 1, 1982, and is entitled "Independent Adoptions." It applies "only to independent adoptions where parental consent is withheld." This case was heard on June 14, 1982, and was continued for the purpose of receiving the report on the adoption from the Department of Social Services and for consideration of memoranda of law from the parties. The opinion and order of the court was filed on August 16, 1982. Because of the proximity of these dates to July 1, 1982, and the lack of any reference to section 77 in the legal memoranda of the court or counsel, or anywhere in the record, we must conclude that the chancellor did not consider the new law. There are criteria contained in section 77 which appear not to have been applied to the facts in this case.

The statute provides that a court may grant a decree of adoption without parental consent

> ". . . if the court finds by clear and convincing evidence that termination of the natural parent's rights is in the child's best interest, and:
>
> (1) The child has been out of the custody of the parent for at least 3 years;
>
> (2) The child has developed significant feelings and emotional ties with the person seeking to adopt; and
>
> (3) One of the following has occurred:
>
>> (i) The parent, given the opportunity, has not maintained meaningful contact with the child during the time that the child has been in the custody of the person seeking to adopt;
>>
>> (ii) The parent has repeatedly or continuously failed to contribute to the physi-

cal care and support of the child, although financially able to do so, or

(iii) The parent has been convicted of child abuse of the child."

In this case, the child has been out of appellee's custody since April 1976, when the natural parents finally separated. The mother acquired official custody of the child on March 17, 1978.

Appellant testified that he has been in the child's environment for almost four years, and, during this time, has developed a good relationship with her, forming a "knit family." He testified that they play games, watch television, and work around the house together, and that she calls him "daddy". The mother confirms that appellant gets along with the child — that the two are very close and do many things together.

The mother testified that appellee had not seen the child since the summer of 1977. According to her, appellee did not request to visit the child before the adoption proceedings in December 1981, and did not send the child cards or gifts (with the possible exception of one Christmas). She stated that appellee offered to care for the child when she went overseas; but when she took the child with her, he did not communicate with Lamanda. The child and her natural father had some telephone conversations. Appellant agreed with the mother's testimony, adding that appellee has asked for visitation rights since initiation of the adoption proceedings. He also testified that the child does not refer to her natural father as "daddy."

Appellee declared that Lamanda referred to him and appellant as "daddy." He stated that he last saw his daughter in July 1978. He would like to visit her, but previously lacked the money to make frequent visits. He did not communicate with his former wife about visitation. He asked the court to give him six to eight weeks of visitation each summer, plus visitation rights every other Christmas. He said that he calls Lamanda twice a month, and did send her cards and letters, a number of which were returned unopened.

Ms. Courtney asserted that appellee made no contribution to the child's support from their last separation until December 8, 1981, ten days before the adoption proceedings commenced. Appellant confirmed that the natural father had sent no money to the child in Germany, although he had sent some money after the adoption proceedings commenced.

Appellee responded that he sent money irregularly, whenever he could afford to. He said that he sent several hundred dollars in support payments to the child between the 1976 separation and the initiation of the adoption proceedings, but he had no check stubs to corroborate this testimony. He said that he did not send payments overseas because he had been advised that he was not legally obligated to do so. He sent gifts jointly with other members of his family.

The trial court was required to apply the criteria of Article 16, section 77 to the facts of this case, as set out above.

"Judges are presumed to know the law" *Hebb v. State,* 31 Md. App. 493, 499 (1976); *Samson v. State,* 27 Md. App. 326, 334 (1975), but where we fail to find in the trial judge's written opinion or any place else in the record any reference to the applicable criteria, we can reverse and remand to the trial court for further action. *Washington County Dept. of Social Services v. Mary Alice Clark,* 296 Md. 190, 198-99, 461 A.2d 1077, 1081-82 (1983); *Colonial Carpet v. Carpet Fair,* 36 Md. App. 583, 591-92 (1977).

Although the law is in a state of flux regarding the application of new law to pending litigation, *Suggs v. State,* 52 Md. App. 287, 291 n. 2 (1982), one thing is clear: "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *T & R Joint Venture v. Office of Planning & Zoning,* 47 Md. App. 395, 407 (1980) *(quoting Bradley v. School Board of Richmond,* 416 U.S. 696, 711 (1974)). This principle has long required application of laws that were adopted after lower court decisions but before appellate decision of litigation. *E.g., Janda v. General Motors,* 237 Md. 161, 169 (1964); *Co.*

*Council v. Carl M. Freeman Assoc.,* 281 Md. 70, 76 (1977); *O'Donnell v. Bassler,* 289 Md. 501, 508 (1981); *Pickett v. Prince George's County,* 291 Md. 648, 662 (1981); *Teays v. Supreme Concrete Block,* 51 Md. App. 166 (1982). The rationale for this principle is that it would be anomalous for a court to apply obsolete standards and issue a mandate that is inconsistent with current law. *Lucado v. State,* 40 Md. App. 25, 31 (1978); *Suggs v. State, supra,* 52 Md. App. at 290.

It would be equally anomalous for the trial court to apply law that is outdated at the time of its decision, only to be reversed on appeal. Accordingly, it has been held that a trial court, like an appellate court, must apply the law in effect at the time of its decision, absent contrary legislative intent or manifest injustice. *See T & R Joint Venture v. Office of Planning & Zoning, supra,* 47 Md. App. at 404; *Mraz v. County Comm'rs of Cecil Co.,* 291 Md. 81, 90 (1981); 2 *Sutherland on Statutes and Statutory Construction* §41.08 at 278 (4th ed. 1973).

In this case, there is no evidence that the legislature intended to preclude application of the statute to pending litigation. As for "manifest injustice," Judge Wilner wrote for our Court:

> "The [Supreme] Court in *Bradley* did not define precisely what it meant by 'manifest injustice,' but noted that the matter centered on (1) the nature and identity of the parties, (2) the nature of their rights, and (3) the nature of the impact of the change in law upon those rights. Although the Maryland Court of Appeals has not, to date, expressly adopted the *Bradley* analysis (or even cited *Bradley),* still, since the basic doctrine applied there is precisely the same as that announced and applied in *Janda* and its predecessors, and because it makes eminently good sense, we think it is a relevant and useful standard by which to gauge our own State law." 47 Md. App. at 407.

The law governing adoptions seeks to protect the child, the natural parents and the adopting parent or parents. Md. Ann. Code, art 16, § 67 (1981 repl. vol.); the rights of the parents, both natural and adoptive, are not absolute, however, but are subject to the best interests of the child.

> "While the natural rights of parents should be carefully guarded, the welfare and best interests of the child are primary considerations in all adoption proceedings. The validity of legislation permitting an adoption without the parents' consent is based upon the fact that a parent has no inherent right of property in a child, and the right that a parent has to the custody and rearing of his children is not an absolute one, but one that may be forfeited by abandonment, unfitness of the parent, or where some exceptional circumstances render the parents' custody of the child detrimental to the best interests of the child."

*Coffey v. Dept. of Social Services,* 41 Md. App. 340, 358 (1979) (quoting *Winter v. Director of the Department of Public Welfare of Baltimore City,* 217 Md. 391, 395-96 (1958)). The change in the statute does not deleteriously affect the natural or adoptive parents' rights, but merely elaborates the criteria to be employed in determining the best interests of the child. Since we perceive no manifest injustice under the three-pronged *Bradley* test and we detect no legislative impediment to application of the new statute to this litigation, we remand to permit the chancellor to apply the new statutory criteria to the facts of this case. *Lawton T. Sharp Farm v. Somerlock,* 52 Md. App. 207, 211 (1982).

## Contempt

Although "the right of appeal in contempt cases is not available to the party who unsuccessfully sought to have another's conduct adjudged to be contemptuous," however,

"There may be occasional instances in which the order imposing the punishment for civil or criminal contempt or refusing to impose the order for civil contempt is so much a part of or so closely intertwined with a judgment or decree which is appealable as to be reviewable on appeal as part of or in connection with the main judgment. . . ."

*Tyler v. Baltimore County,* 256 Md. 64, 71 (1969); *Becker v. Becker,* 29 Md. App. 339 (1975).

Since the subject of the petition for contempt was the alleged failure of the appellant to support the minor child, and because the repeated and continuous failure of the natural parent to support the child, although financially able to do so, is one of the criteria set out in section 77 of Article 16, for the court to consider in granting an adoption without the consent of the natural parent, we hold that the contempt issue is closely intertwined with the judgment of the court in this case and that the appellant has the right to appeal this issue.

The chancellor's decision was contained in the following: "The Court finds the form (sic) inappropriate." It is obvious that "form" was intended to be "forum." It is equally as obvious that the appellant failed to follow the proper procedure for enforcing the decree or order of a foreign court and, therefore, the issue simply was not properly before the circuit court. Article 89C, Md. Ann. Code (1979 repl. vol.). We see no error here. We affirm that part of the order disposing of the contempt issue.

> *Judgment affirmed in part, reversed in part.*
> *Case remanded for further proceedings in accordance with this opinion.*
> *Costs to be paid by appellant.*