607 A.2d 584

**FANTASY VALLEY RESORT, INC.**

v.

**GAYLORD FUEL CORPORATION d/b/a
Gaylord Stone Company.**

No. 1734, Sept. Term, 1991.

Court of Special Appeals of Maryland.

June 2, 1992.

**268**

Warren K. Rich and Douglas S. Brossman (Graham & James on the brief) Washington, D.C., for appellant.

Robert H. Reinhart (Walsh, Walsh & Reinhart, Cumberland) and W. Dwight Stover (Stover & Sherbin, Oakland, on the brief), for appellee.

Argued before MOYLAN, ROSALYN B. BELL and HARRELL, JJ.

ROSALYN B. BELL, Judge.

This appeal is yet another chapter in an ongoing battle between neighbors that began almost 20 years ago. Appellant, Fantasy Valley Resort, Inc. (Fantasy Valley), operates a "get-away" vacation spot for various corporate, religious, and other organizations. Appellee, Gaylord Fuel Corp. (Gaylord), mines an open-face limestone quarry on adjacent property. Over the years, Fantasy Valley sought to stop Gaylord from mining the quarry, contending that Gaylord's operations constitute a nuisance. Fantasy Valley complained that flyrock,[1] noise, and vibrations from blasting operations at the quarry and dust from the movement of limestone out of the quarry has interfered with the use and enjoyment of the resort, and amounts to a trespass on its land. On August 28, 1991, the Circuit Court for Garrett County issued a permanent injunction, barring Gaylord from operating its quarry business on the property except in accordance with specific requirements outlined in a mining plan submitted to the court on July 25, 1991. Fantasy Valley has appealed, contending:

—the trial court erred by allowing the continuation of occasional deposits of flyrock to be thrown onto the Fantasy Valley property from the Gaylord quarry;

—the mining plan incorporated into the trial court's Order of Injunction fails adequately to abate or curtail the continuing trespass and private nuisance which has resulted from operations at the Gaylord site;

—the injunction issued by the trial court lacks sufficient specificity to ensure abatement of continuing trespass and private nuisance; and

---

**1.** According to the *Blasting Guidance Manual,* United States Department of the Interior, Office of Surface Mining Reclamation and Enforcement, 182 (March 1987) (Manual), flyrock is: "Rock that is propelled through the air from a blast." The Manual goes on to state: "Excessive flyrock may be caused by poor blast design or unexpected zones of weakness in the rock."

—the trial court's injunction order improperly incorporated by reference other documents in violation of Rule BB78.

We affirm and explain.

## THE FACTS

In 1964, Robert M. Leatherbury purchased an interest in an 80–acre farm in rural Garrett County. He acquired the other outstanding interests in the property in 1965 and 1975. The property originally included only a barn and a farm house. Over the years, Leatherbury improved the property, constructing cottages, an eight-unit motel, an "Old West Saloon," a tennis court, trout ponds, a swimming pool, and a Western-style chapel. This became the Fantasy Valley Resort.

Gaylord Fuel Corp. acquired 33.06 acres adjoining Leatherbury's property in 1973 and an additional adjacent parcel of 11.24 acres in 1975. Gaylord sought and received permits from Garrett County for removal of surface soil for open-face limestone quarrying, and from the Department of Health and Mental Hygiene to install and operate limestone crushing and air pollution control equipment in 1973.

Leatherbury filed suit in late 1973 against Gaylord, seeking to enjoin the proposed quarry operation which had not yet begun to function. In *Leatherbury v. Peters*, 24 Md. App. 410, 332 A.2d 41 (1975), this Court upheld an order of the trial court dismissing Leatherbury's bill of complaint against Gaylord as being premature. The Court of Appeals affirmed, without prejudice to any future action by Leatherbury after the quarry was in operation. *Leatherbury v. Gaylord Fuel Corp.*, 276 Md. 367, 377, 347 A.2d 826 (1975).

Quarrying operations began in 1974 on the Gaylord property. Blasting procedures were conducted to remove limestone from the face of the quarry and the stone was then crushed, graded and hauled from the site. The last blasting operations were logged in 1985. After 1985, blasting was curtailed and then halted due to a decline in the limestone

market. The present suit was initiated after Gaylord expressed its intention to resume blasting operations.

During this time, Fantasy Valley Resort faltered and Richard Chaney, a long time friend of Leatherbury's, purchased a one-half interest in the real estate and personal property. Chaney is currently the principal in the Fantasy Valley Resort corporation. Mary Pepin Kidd, the personal representative of Leatherbury's estate, filed suit with Chaney against Gaylord on August 4, 1986. Fantasy Valley's complaint alleged an action in trespass and nuisance. The complaint sought damages resulting from the trespass and nuisance to Fantasy Valley property from past blasting and day-to-day activities at the Gaylord quarry. Fantasy Valley also sought a permanent injunction against future quarrying activities.

Trial on the issues was held on May 16–18, 1990. By memorandum dated June 29, 1990, the trial court found that Gaylord's quarry operations constituted a continuing trespass and private nuisance upon the property of Fantasy Valley. The court entered judgment in favor of Fantasy Valley in the amount of $1.00 for continuing trespass and $1.00 for private nuisance. The court delayed entry of final judgment, however, to allow subsequent findings regarding an injunction of Gaylord's activities. The court held two subsequent hearings to address appropriate parameters to be included in the permanent injunction on Gaylord's quarry operations. At the conclusion of both hearings, the court concluded that Gaylord had failed to provide a plan which would adequately abate the continuing trespass and private nuisance to Fantasy Valley.

On June 13, 1991, Gaylord submitted a third mining plan to the court. By letter dated July 24, 1991, Fantasy Valley submitted to the court its objections prepared by its expert to the mining plan. The court, by order dated August 28, 1991, issued the permanent injunction.

On September 19, 1991, Fantasy Valley filed this appeal. On January 13, 1992, Fantasy Valley also filed a Motion for

Stay of Judgment due to Gaylord's continued quarry operations. The Motion for Stay of Judgment was heard on March 11, 1992. In that March 11 hearing, the trial judge denied Fantasy Valley's request to modify the previous judgment.

## THE INJUNCTION

Fantasy Valley first complains that the trial court erred by allowing the continuation of blasting at the Gaylord property which, in turn, might allow occasional deposits of flyrock to be thrown onto the resort property. What Fantasy Valley is really arguing, however, is that the trial court's injunction did not go far enough and grant it all of the relief it requested, namely, to shut down Gaylord's quarrying operation.

As a general rule, the decision to grant or deny an injunction in an appropriate case is a discretionary one. The exercise of discretion by the trial court will not be disturbed on appeal absent a showing that discretion has been abused. *Seci, Inc. v. Chafitz, Inc.* 63 Md.App. 719, 725, 493 A.2d 1100 (1985). An injunction is an extraordinary remedy. In *Campbell v. Mayor of Annapolis*, 44 Md.App. 525, 536–537, 409 A.2d 1111, *reversed in part*, 289 Md. 300, 424 A.2d 738 (1980), this Court said, quoting *Whalen v. Dalashmutt*, 59 Md. 250, 252 (1883):

> " '[I]t is a well settled principle in the practice of injunction, that where a defendant asserts positively that it is not his intention to do a certain act, or to violate any particular right asserted by the plaintiff, and there be no evidence to show to the contrary, the Court will not interfere by injunction. It will neither grant nor continue an injunction in the face of such disclaimer.' "

To enjoin a nuisance on adjoining property, the landowner must show "that the injury is of such a character as to materially diminish the value of his property and seriously interfere with the ordinary comfort and enjoyment of it." *Leatherbury*, 276 Md. at 377, 347 A.2d 826. A business

may be enjoined if it is operated in a manner that creates a nuisance to neighboring property. *Corbi v. Henderson,* 268 Md. 459, 464, 302 A.2d 194 (1973). In *Corbi,* 268 Md. at 464, 302 A.2d 194, the Court of Appeals held:

"The law is clear in Maryland that though not a nuisance *per se,* any business so conducted as to become such may be enjoined. So, where a trade or business as carried on interferes with the reasonable and comfortable enjoyment by another of his property, a wrong is done to a neighboring owner for which an action lies at law or equity. The decisions of this Court, as well as the courts of our sister states, have recognized that the creation of excessive noise, ... may become a nuisance which can be abated."

In the instant case, in its memorandum of June 29, 1990 with respect to damages, the trial court wrote:

"There were at least nine blasts at the Gaylord quarry after August 4, 1983, one of which was described by Mary Kidd and referred to earlier. No evidence was presented which quantified the damages caused by the blasting after August 4, 1983, or, indeed, even before that date. There simply was no evidence of *any* diminution of property value; there was evidence that customers left the resort early but no evidence of the amount of economic loss to the business. There was evidence that Mary Kidd and others were frightened by the blasts and that some trees were damaged by fly rock, but no value was assigned to the loss of the trees. There was evidence that the resort was required to employ extra help to clean up after the blasts because of dust and smoke, but there was no evidence of the cost of that help. None of the evidence of injury or fright was apportioned to events after August 4, 1983."

With respect to the injunction, the court wrote:

"It would appear that while the use of general regulatory language is permissible, if not preferred, *Bishop Processing Co. v. Davis,* 213 Md. 465 [132 A.2d 445] (1957); *Five Oaks [Corp. v. Gathmann,* 190 Md. 348, 58 A.2d 656 (1948) ],* Gaylord can be required to refrain from

some practices which contribute to plaintiffs' distress and to perform other practices in such manner as to reduce the deleterious effect on plaintiff's reasonable enjoyment of its property. The operation of Gaylord's quarry is a lawful business; much of the Fantasy Valley development was accomplished after the onset of the quarrying operation and with full knowledge of its effects. A balanced judgment with some specificity which permits Gaylord to continue its quarrying operation and yet provides protection for plaintiff, Fantasy Valley Resort, Inc., will reduce or eliminate the possibility of a multiplicity of suits which could be generated by more general language."

■ The court then drafted an injunction which incorporated the third mining plan submitted by Gaylord. The mining plan called for substantial changes in the quarrying operations to mitigate the impact on Fantasy Valley. Gaylord proposed to transfer its blasting operations underground after it completed the necessary site preparation. Gaylord also added blasting mats [2] to reduce the danger of flyrock during the site preparation phase. We cannot find that the judge abused his discretion in fashioning the injunction in the manner in which he did.

—The Mining Plan—

Fantasy Valley argues that the mining plan incorporated into the court's Order of Injunction fails adequately to abate or curtail the continuing trespass and private nuisance which it claims resulted from operations at the Gaylord site. We cannot, however, find that the trial judge was clearly erroneous in concluding that Gaylord's third mining plan was a reasonable method for abating the continuing nuisance and trespass on Fantasy Valley's property.

---

**2.** According to the Manual, a blasting mat is a "covering placed over a shot [explosive charge] to hold down flying material; usually made of woven cable, rope, or scrap tires."

 Unless the factual findings of the trial court are clearly erroneous, an appellate court may not arrive at different factual conclusions. *Courtney v. Richmond*, 55 Md.App. 382, 387, 462 A.2d 1223 (1983). If there is any competent material evidence to support the factual findings of the trial court, those findings cannot be held to be clearly erroneous. *Staley v. Staley*, 25 Md.App. 99, 110, 335 A.2d 114, *cert. denied*, 275 Md. 755 (1975). The weight of the evidence and the credibility of the witnesses is a matter for the determination of the trial court and will not be disturbed on appeal unless clearly erroneous. *Byrd v. State*, 13 Md.App. 288, 295, 283 A.2d 9 (1971), *cert. denied*, 264 Md. 746 (1972).

 In his decision of June 29, 1990, the trial judge found that Fantasy Valley had been

"in part, deprived of the ordinary comfort and reasonable enjoyment of their property by Gaylord's conduct of the quarry operation, and that Fantasy Valley Resort, Inc., may continue to be so deprived. Thus, some form of injunctive relief is appropriate. A court must use care in avoiding prohibiting a lawful business needlessly, but if it cannot continue without impairing the rights of others it may be prohibited or regulated. Courts often balance conveniences and inconveniences, and regulation, rather than prohibition of lawful business is countenanced, so long as the regulation accomplishes no more than is necessary to abate or curtail the nuisance." (Citations omitted.)

The court then stated that an additional hearing would be held on the specific regulation of the Gaylord quarry. The court asked Gaylord to submit a plan for approval. On two separate occasions Gaylord submitted plans to the court. The court held hearings on each one. After each hearing the court ruled that the plans did not provide the requisite specificity and requested an additional plan. Finally, on June 13, 1991, a third plan was submitted that was approved by the court on August 28, 1991. The final plan was accepted without a hearing. In his Order of Injunction, the

trial judge found "the plan to be reasonable and within the parameters of [the injunction section] of the July 2, 1990 judgment." The trial judge, having presided over the trial and two additional hearings on the granting of the injunction, and having heard all of the testimony and read all of the reports, was in the best position to determine whether Gaylord's third mining plan was adequate to abate the continuing trespass and nuisance. We cannot hold that he made his decision in error.

### —Specificity of Injunction—

■ Fantasy Valley next complains that the injunction issued by the trial court lacks sufficient specificity to ensure abatement of the continuing trespass and private nuisance. We do not agree.

To be valid, an order

"granting an injunction shall set forth the reasons for its issuance; shall be specific in terms; and shall describe in reasonable detail, and not by reference to the complaint or other document, the act sought to be required or commanded or restrained or forbidden."

Rule BB78. An order that lacks specific terms and reasonable details, is too vague or too broad, will be vacated. *Franzen v. Dubinok,* 45 Md.App. 728, 734, 415 A.2d 621 (1980), *aff'd* 290 Md. 65, 427 A.2d 1002 (1981).

■ Fantasy Valley argues that the Order of Injunction fails to meet the specificity requirement of Rule BB78. Fantasy Valley complains that the order does not

"mention the court's specific findings of continuing trespass and private nuisance, nor does it describe the component parts of the continuing trespass and private nuisance which the Court sought to enjoin, i.e. impacts found to result from blasting activities (physical intrusion resulting from flyrock, noise, dust, smoke, fear of flyrock intrusions, and inability to use western portion of property) and general day to day activities (noise and dust resulting from hauling and crushing operations)."

We disagree. While not a model of clarity, we can read the injunction to require that Gaylord must not conduct any quarrying operations that do not conform to the mining plan that it submitted, which was designed to reduce the effect of the mining operations on the Fantasy Valley Resort. *See Chesapeake Outdoor Enterprises, Inc. v. Mayor of Baltimore*, 89 Md.App. 54, 76–79, 597 A.2d 503 (1991).

—Other Documents—

Finally, Fantasy Valley argues that the trial court's injunction order improperly incorporated by reference other documents in violation of Rule BB78. Specifically, Fantasy Valley argues that the mining plan was not attached to the order and that Rule BB78(a) prohibits reference to the complaint or other documents in an order of injunction. Fantasy Valley's reading of the Rule, however, is not entirely precise.

The granting or denying of an injunction is always within the discretion of the court. *State Department of Health & Mental Hygiene v. Baltimore County*, 281 Md. 548, 554, 383 A.2d 51 (1977); *Anne Arundel Co. v. Whitehall Venture*, 39 Md.App. 197, 200, 384 A.2d 780 (1978). "This is also true with reference to the form in which the decree takes." *Anne Arundel Co. v. Litz*, 45 Md.App. 186, 197, 412 A.2d 1256 *cert. denied*, 288 Md. 731 (1980).

As stated previously, Rule BB78 requires that the act "sought to be required or commanded or restrained or forbidden" be specified. Under the Rule, this cannot be accomplished by "reference to the complaint or other document." An order may not be vague because one must be able to know how to comply with the order or defend him- or herself against a charge of contempt for its violation. *Chesapeake Outdoor Enterprises, Inc.*, 89 Md.App. at 79–80, 597 A.2d 503; *Joy v. Anne Arundel County*, 52 Md. App. 653, 663, 451 A.2d 1237 (1982), *cert. denied*, 295 Md. 440 (1983). Joy was enjoined by Anne Arundel County from using certain property because he had dumped various

types of waste on it in violation of the County's zoning ordinances. The injunction prohibited him from bringing materials onto the property, directed him to remove materials from the property, and required him "to restore the property to its original topography." *Joy*, 52 Md.App. at 654, 451 A.2d 1237. Joy appealed the injunction and this Court held that the portion of the injunction, which required Joy "to restore the property to its original topography," was too vague and overbroad. In vacating that portion of the injunction this Court said:

> "The third paragraph, ordering Joy to return the property to its original topography, presents more difficulty. The record appears to contain no evidence of what the 'original' topography of the property was (whatever date 'original' may refer to) or how Joy changed it. Thus, it is not clear just how Joy is to comply with this paragraph, or how he might defend himself against a charge of contempt for its violation."

*Joy*, 52 Md.App. at 663, 451 A.2d 1237. Here, however, we cannot say that the order violates the Rule.

The act sought to be restrained or forbidden in this case is Gaylord's "quarry business." Gaylord is the one that must comply with the plan in order to be in compliance with the terms of the injunction. The mining plan approved by the court and specified in the injunction was drafted by Gaylord and presumably it knows what is entailed. Gaylord has raised no objections to either the injunction's form or its contents. Gaylord is the one that will have to either comply or defend itself against a charge of contempt for violating the injunction. Given the length of the third mining plan, 53 pages to be exact, we cannot say that the trial judge erred in writing the injunction in the manner in which he did.

The third mining plan, which is incorporated into the injunction, seeks to 1) remove the threat of flyrock by employing blasting mats; 2) move the mining operation underground to reduce the effect of surface mining and detonations; and 3) address the problems of dust control.

The plan also provides Fantasy Valley with a timetable for the completion of the quarry's movement underground. The mining plan also addresses hauling, ventilation, drainage, and notification and warning procedures. The trial judge has sought to fashion an injunction that will permit Gaylord to use its property in a manner that will also abate the trespass and nuisance Fantasy Valley has experienced.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.